Paul J. GASPARD, Plaintiff-Appellant,

v.

TAYLOR DIVING & SALVAGE CO., INC., et al., Defendants-Appellees.

No. 78–1299.

United States Court of Appeals, Fifth Circuit.

July 2, 1981.

Rehearing Denied Aug. 24, 1981.

Law Offices of Frederick J. Gisevius, Jr., Frederick J. Gisevius, Jr., Dennis L. Rousseau, Jane M. Gisevius, New Orleans, La., for plaintiff-appellant.

Christovich & Kearney, William K. Christovich, New Orleans, La., for defendants-appellees.

Before THORNBERRY, COLEMAN and AINSWORTH, Circuit Judges.

THORNBERRY, Circuit Judge:

While employed as a diver for the Taylor Diving & Salvage Company, Paul Gaspard developed osteonecrosis or bone rot in his shoulder joints, a painful and permanent condition that will forever prevent him from diving professionally. When the condition was finally diagnosed in March 1973, Taylor took Gaspard off its diving rolls, but continued to employ him as a diving supervisor until May 1974, when Gaspard decided to leave the company. Gaspard brought suit against Taylor in June 1974, joining counts for negligence under the Jones Act, 46 U.S.C. § 688, unseaworthiness, and maintenance and cure. He contended that improper supervision and decompression had caused his permanent disability. A jury found Taylor negligent and awarded Gaspard $45,000 under the Jones Act. The jury also awarded him $8,760 in maintenance and cure, and, after finding that Taylor wilfully, arbitrarily or unreasonably failed to pay maintenance and cure, awarded an additional $296,240 in damages.[1] The trial court entered judgment accordingly. Tay-

1. The relevant interrogatories and the jury responses were as follows:

4. Was [Taylor], through its employees, representatives, and/or agents negligent?
Answer. Yes.

. . . .

5. Did the negligence of [Taylor] play any part, no matter how slight, in producing plaintiff's injuries?
Answer. Yes.

. . . .

8. Was plaintiff, Paul J. Gaspard, negligent?
Answer. No.

. . . .

10. Without any reduction for negligence on the part of plaintiff, if any, what amount do you find will fairly and adequately compensate the plaintiff for his injuries?
Answer. $45,000.

. . . .

12. What amount do you find plaintiff is entitled to receive for maintenance and cure?

lor then filed motions for new trial and for judgment n. o. v. The court denied the motion for new trial, but granted the motion for judgment n. o. v. as to the award for damages for failure to provide maintenance and cure, thus reducing plaintiff's recovery from $350,000 to $53,760. Plaintiff appeals. For the reasons that follow, we think the trial court erred in granting the defendant's motion for judgment n. o. v.[2] and therefore reinstate the jury verdict.

> Answer. $8,760.
>
> . . . .
>
> 13. . . . [W]as [Taylor] willful, arbitrary or unreasonable in its failure to pay Paul J. Gaspard maintenance and cure?
> Answer. Yes.
>
> . . . .
>
> 14. If your answer to Question No. 13 is Yes, what amount do you find plaintiff is entitled to recover as damages from his employer because of its failure to pay maintenance and cure?
> Answer. $296,240.
>
> 3rd Supp. Record on Appeal, Vol. III, at 547–49.

2. In reviewing a judgment notwithstanding the verdict, we do not reevaluate the evidence to form our own conclusions regarding the correctness of the jury verdict. Rather, we determine whether reasonable men could, on any theory submitted to the jury, have resolved the dispute as the jury did. *Crowe v. Lucas*, 595 F.2d 985, 989 (5th Cir. 1979); *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc). In *Boeing* we stated:

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

411 F.2d at 374. The *Boeing* standard does not apply to Jones Act claims—the court can direct a verdict or grant judgment n. o. v. on a Jones Act count only when there is a complete absence of probative facts supporting the nonmovant's position. 411 F.2d at 370; *Allen v. Seacoast Products, Inc.*, 623 F.2d 355, 360 (5th

The trial court was troubled by the award of $8,760 for maintenance and cure,[3] apparently because the judge thought substantial evidence established that Gaspard had in fact reached the point of maximum cure by the time he abandoned his job with Taylor, but the court nonetheless declined to disturb that finding. He focused next on the finding that Taylor had been willful, arbitrary or unreasonable in its failure to pay maintenance and cure and found no evi-

Cir. 1980). We are mindful that, in light of the seventh amendment guarantee of the right to jury trial, we must proceed cautiously, and we must validate the jury verdict if at all possible. *See, e. g., Lucas v. American Manufacturing Co.*, 630 F.2d 291, 293 (5th Cir. 1980); *Guidry v. Kem Manufacturing Co.*, 598 F.2d 402, 406 (5th Cir. 1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980). We also recognize that ambiguities or doubts in the application of the law of maintenance and cure are resolved in favor of the seaman. *Liner v. J. B. Talley & Co.*, 618 F.2d 327, 332 (5th Cir. 1980).

3. We recently described the right to maintenance and cure:

> Maintenance and cure are centuries old remedies under the general maritime law. A seaman's right to maintenance and cure is implicit in the contractual relationship between the seaman and his employer, and is designed to ensure the recovery of these individuals upon injury or sickness sustained in the service of the ship. Maintenance and cure are due without regard to the negligence of the employer or the unseaworthiness of the ship. Maintenance is a *per diem* living allowance, paid so long as the seaman is outside the hospital and has not reached the point of "maximum cure." Cure involves the payment of therapeutic, medical, and hospital expenses not otherwise furnished to the seaman, again, until the point of "maximum cure."
>
> Plotting the point of "maximum cure" is a troublesome task both factually and as a matter of law. The accepted legal standard holds that maximum cure is achieved when it appears probable that further treatment will result in no *betterment* of the seaman's condition. Thus, where it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved.

*Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979) (citations omitted).

dence to support it. Prior to trial, the plaintiff had neither demanded maintenance payments nor presented any medical bills to the defendant. Except for diagnostic purposes, Gaspard had never been a patient in any hospital, and Taylor had never been informed that Gaspard would undergo those diagnostic tests. As soon as Taylor became aware of Gaspard's condition, the company offered him a position as a diving supervisor, and Gaspard held that position for at least eight months. For these reasons, the court found no evidence that Taylor had been willful, arbitrary or unreasonable in failing to pay maintenance and cure, and no evidence that Gaspard had been injured by that failure.

We think it apparent that the court, in reaching its conclusion, focused only on Taylor's conduct after Gaspard had left the company. That limited focus is perhaps explained by the fact that the jury no doubt reached the figure of $8,760 by awarding Gaspard $8 in maintenance for each day since the day he left Taylor. We are inclined to agree with the trial court, for the reasons he noted, that Taylor was neither willful, arbitrary not unreasonable in its failure to pay this $8,760 subsistence allowance. Further, an award of close to $300,000 premised on a failure to pay only $9,000 would certainly concern us. We are, however, required by the nature of this case to consider Taylor's conduct *prior* to the day that Gaspard terminated his employment. Having done so, we find that the evidence adduced at trial does support the jury verdict.

The duty to provide maintenance and cure embraces not only the obligation to provide a subsistence allowance and to pay for medical expenses actually incurred by the seaman, but to take all reasonable steps to ensure that the seaman, when he is injured or becomes ill, receives proper care and treatment. *See generally* 2 Norris, The Law of Seamen (3rd ed. 1970 & Supp.) § 583 *et seq.*, and cases cited therein. If an unreasonable failure to provide maintenance and cure aggravates the seaman's condition, the shipowner is liable not only for the increased medical expenses and maintenance that may become necessary, but also for the full tort damages that result. *Cortes v. Baltimore Insular Line,* 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932); *see Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); *Blanchard v. Cheramie,* 485 F.2d 328 (5th Cir. 1973). If the shipowner, in failing to provide maintenance and cure, has been callous and recalcitrant, *Vaughan,* 82 U.S. at 530–31, 83 S.Ct. at 999, or arbitrary or capricious, *see Richard v. Bauer Dredging Co.,* 433 F.2d 955 (5th Cir. 1970), reasonable attorney's fees may also be recovered.[4] Thus, as Jus-

---

4. The trial court had instructed the jury as follows:

> Where the defendant willfully and arbitrarily fails to pay maintenance or provide care to a seaman, and such failure results in an aggravation of the seaman's injury, then the seaman may recover those damages and necessary expenses as he can prove he sustained. This would include damages for loss of future earnings, pain and suffering, medical expenses and a reasonable sum to compensate his attorney for services furnished in obtaining maintenance and cure for the plaintiff.
>
> Therefore, in order to award damages to the plaintiff for the failure of the ship owner to provide maintenance and cure, you must first have found (1) that plaintiff was entitled to maintenance and cure; (2) that it was not provided; (3) that defendant willfully and arbitrarily failed to provide it; and (4) that such failure resulted in injury to the plaintiff.

> In order for plaintiff to receive damages for defendants' failure to pay maintenance and cure, plaintiff must have shown that the failure to pay was arbitrary, willful or callous. If reasonable grounds exist for defendants' refusal, no award for damages should be given.

3rd Supp. Record on Appeal, Vol. III, at 530–31. As noted in the text, willful and arbitrary conduct is a prerequisite only for an award of attorney's fees. An unreasonable failure to provide proper care, even absent a showing of willfulness, callousness or arbitrariness, is sufficient to render the shipowner liable for full tort damages. Plaintiff's attorney voiced no objection to this instruction. Any error was cured by Interrogatory No. 13, which specifically asked the jury whether the defendant was "willful, arbitrary, *or* unreasonable" in its failure to pay maintenance and cure, *id.* at 534–35 (emphasis added), thus allowing the jury to award full damages on a finding of unreasonableness without more.

tice Cardozo noted in *Cortes*, a seaman whose injuries are aggravated by a negligent failure to provide appropriate care on board ship has overlapping causes of action. He can recover full tort damages under either a count for negligence under the Jones Act or a count for breach of the maritime duty of maintenance and cure. 287 U.S. at 374–75, 53 S.Ct. at 175.

 Our review of the record convinces us that the jury could reasonably have concluded that Gaspard, on a number of occasions, suffered pain, nausea, and other symptoms of decompression sickness, reported these symptoms to Taylor, yet was unreasonably denied treatment in a recompression tank. Extensive testimony established that a failure to provide proper recompression would have been likely to aggravate Gaspard's developing bone necrosis. Further, a jury determination that Taylor unreasonably denied Gaspard recompression treatment and that this denial caused or contributed to Gaspard's condition would be entirely consistent with the jury's explicit finding that Taylor's negligence played a part in producing Gaspard's injuries.[5] The jury was thus entitled to award Gaspard full tort damages under either the Jones Act count, the maintenance and cure count, or both, as long as it did not award a double recovery for any element of damages. Given the nature of Gaspard's injury, the pain and suffering he continues to endure, his permanent disability from the lucrative diving profession, and the possibility that he will eventually require surgery to have artificial shoulder joints inserted, we do not consider the jury's total award of $350,000 to be unreasonable. The trial court apparently would agree with us—he stated that he would have had no problem if the jury had awarded this amount entirely under the Jones Act count. 4th Supp. Record on Appeal, Vol. 1, at 21. The court's detailed instructions made it absolutely clear that the jury was not to award a double recovery. The total award is not so high as to warrant an inference that, in awarding $45,000 under the negligence count and

$296,240 under the maintenance and cure count, the jury disregarded its instructions.

Finally, although we must reverse the trial court on this issue, we think it appropriate to commend him for his overall performance in conducting an extremely long and tedious trial. The trial lasted six weeks and produced a record of twenty-one volumes. The attorneys for both sides were often volatile and not often helpful. Reviewing the record in light of what we had to endure in only forty minutes of oral argument, we are convinced that the trial court displayed a remarkable degree of patience and restraint.

REVERSED.

---

5. On appeal, Taylor does not challenge the finding of negligence.