### Lee Douglas HARPER

v.

### ZAPATA OFF–SHORE COMPANY.

### Civ. A. No. 82–2802.

United States District Court,
E.D. Louisiana.

May 5, 1983.

---

Philip E. Henderson, Henderson, Hanemann & Morris, Houma, La., for plaintiff.

Daniel A. Webb and Michael G. Cordes, Hebert & Abbott, New Orleans, La., for defendant.

## ORDER AND REASONS

DUPLANTIER, District Judge.

Plaintiff Lee D. Harper, a seaman, sued his employer, defendant Zapata Offshore Co., claiming damages for personal injuries under the Jones Act and the general maritime law. Plaintiff also sought an increase in the $8 per day maintenance[1] payments being made by Zapata and recovery of attorney's fees and punitive damages for Zapata's failure to pay the proper amount of maintenance. The jury returned a verdict adverse to defendant on all issues. Before the court is defendant's motion for a new trial or, alternatively, for remittitur. For the following reasons, the motion is granted in part and denied in part.

Plaintiff was injured on March 4, 1981, when he fell down a set of stairs aboard the CONCORD, one of defendant's semi-submersible drilling barges. As a result of the accident, Harper suffered severe back injuries, requiring a laminectomy in May of 1981. Several months later, a second lami-

nectomy was started at a different level of the spine, but had to be aborted because of complications in the anesthetizing procedure; this laminectomy was finally performed in July of 1982. Plaintiff may require a third operation because of residual problems from the two prior surgeries and difficulties at a third disc level.

After concluding that plaintiff's accident was due solely to Zapata's negligence and the unseaworthiness of its vessel, the jury awarded plaintiff $1,000,000 for compensatory damages. The jury then determined that the proper daily rate of maintenance to which plaintiff was entitled was $40 per day and answered, "YES" to the following question:

> Was defendant's failure to pay an amount of maintenance higher than $8 per day intentional and with callous disregard for the plaintiff's rights?

The final interrogatory was answered as indicated:

> What amount should be awarded to plaintiff for defendant's failure to pay an amount of maintenance higher than $8 per day?
>
> (a) As attorney's fees in connection with the claim for additional maintenance? $5000
>
> (b) As punitive damages, if any? $500,000

Defendant urges that an award of punitive damages for failure to pay adequate maintenance is not authorized under any circumstances. Defendant also argues that each of the four awards exceeds the bounds of jury reasonableness; thus it is entitled to a new trial or, alternatively, remittitur.

### I. PUNITIVE DAMAGES

We discuss first the issue of whether the jury instruction permitting an award of punitive damages was erroneous as a matter of law, and if such damages are authorized, under what circumstances.

Relying primarily upon *Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d

---

1. "Cure" is not an issue. Defendant paid all of    plaintiff's medical expenses.

88 (1962), and *Complaint of Merry Shipping, Inc.,* 650 F.2d 622 (5th Cir.1981), plaintiff requested a charge (to which defendant objected) on punitive damages for the employer's failure to pay adequate maintenance. Concluding that the evidence discussed hereafter concerning defendant's conduct with respect to the amount of maintenance being paid plaintiff was more than sufficient to create a jury issue and that the law permitted a punitive damage award, the court gave the following instruction to the jury [2]:

> The plaintiff also claims that Zapata's payment to him of an amount less than the proper amount of maintenance was done willfully, intentionally and with callous and reckless indifference to plaintiff's rights so as to entitle him to an award of punitive damages ...

> If you find that plaintiff has proved that Zapata did act with malice, willfullness or callous and reckless indifference to the right of the plaintiff to be paid the proper amount of maintenance, you should award an amount to pay his attorney's fee for services in connection with the claim for additional maintenance. The law would allow you, in your discretion, also to assess punitive damages against Zapata as punishment and as a deterrent to others, to prevent repetition of such conduct.

> The amount of punitive damages is left to your discretion; in setting the amount, you should consider the purpose to be achieved.

As already noted, the jury decided that Zapata's conduct justified punishment and that $500,000 should be assessed as punitive damages.

The starting point for an examination of the relationship between punitive damages and seaman's maintenance is the United States Supreme Court's decision in *Vau-*

*ghan v. Atkinson, supra,* in which the Court awarded attorney's fees for an employer's "willful", "callous", and "persistent" failure to pay a seaman maintenance and cure. Although the court did not specifically state that the attorney's fees were awarded as punitive damages, the two circuits which have faced the issue, the First Circuit in *Robinson v. Pocahontas, Inc.,* 477 F.2d 1048 (1st Cir.1973), and the Second Circuit in *Kraljic v. Berman Enterprises, Inc.,* 575 F.2d 412 (2d Cir.1978), have determined that the *Vaughan* Court's use of the words "willful" and "callous" indicate that the attorney's fees were punitive. *See also* Maslanka, *Punitive Damages in the Admiralty,* 5 Mar.Law. 223 (1980); Reinschreiber, *Punitive Damages in Admiralty for Bad Faith Refusal to Provide Maintenance and Cure: Robinson v. Pocahontas, Inc.,* 15 San Diego L.Rev. 309 (1978).

The First and Second Circuits disagree, however, as to whether punitive damages in a seaman maintenance claim are limited to attorney's fees or may take the more typical form of a lump-sum payment, the purpose of which is to punish the wrongdoer and deter others from similar behavior. The Second Circuit took a very narrow view of the *Vaughan* opinion and decided that, since only attorney's fees were awarded in *Vaughan,* then punitive damages were limited to that extent:

> We acknowledge that there is much to be said for the argument that if punitive damages are to be awarded there should be no reason to so limit them uniquely in maintenance and cure cases. Nonetheless, this is the holding of the *Atkinson* majority and we feel constrained to follow it.

575 F.2d at 416.

On the other hand, the First Circuit in *Robinson* refused to limit punitive damage recovery to attorney fees.

---

**2.** A very recent decision by the United States Supreme court, *Smith v. Wade,* —— U.S. ——, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), upheld a punitive damage jury charge, quite similar to that in the present case. The Court held that in a claim for damages pursuant to 42 U.S.C. § 1983, the common-law's "majority" rule, fol-

lowed in both state and federal courts, is applicable. Punitive damages may be awarded for "reckless or callous disregard" or "indifference to the rights ... of others"; plaintiff need not prove "actual malicious intent". *Id.* at ——, —— —— ——, ——, 103 S.Ct. at 1628, 1633, 1640.

Mr. Justice Stewart, dissenting primarily on the question of the extent of a seaman's recovery for maintenance and cure but seemingly in agreement with the majority's fundamental premise, stated:

"[I]f the shipowner's refusal to pay maintenance stemmed from a wanton and intentional disregard of the legal rights of the seaman, the latter would be entitled to exemplary damages in accord with traditional concepts of the law of damages. McCormick, Damages, § 79. While the amount so awarded would be in the discretion of the fact finder, and would not necessarily be measured by the amount of counsel fees, indirect compensation for such expenditures might thus be made." *Id.* 369 U.S. at 540, 82 S.Ct. at 1004.

477 F.2d at 1051.

Although it appears to rely primarily upon the *Vaughan* dissent, the decision in *Robinson* more fully comports with the policy considerations implicit in the *Vaughan* majority teaching that "the shipowner's liability for maintenance and cure [is] among 'the most pervasive' of all and that it is not to be defeated by restrictive distinctions nor 'narrowly confined.'" 369 U.S. at 532, 82 S.Ct. at 1000.

■ In *Complaint of Merry Shipping, Inc., supra,* at 625, the Fifth Circuit held squarely that punitive damages may be assessed in an admiralty action based upon unseaworthiness:

Punitive damages have also been held available in other types of admiralty actions. As early as 1818, the Supreme Court raised the possibility of their recovery in *The Amiable Nancy* [16 U.S. (3 Wheat.) 546, 4 L.Ed. 456], a maritime trespass suit described by the Court as "a case of gross and wanton outrage." More recently, in *Robinson v. Pocahontas, Inc.,* the First Circuit upheld an award of punitive damages for a shipowner's willful and callous withholding of a seaman's maintenance and cure.

\*     \*     \*     \*     \*     \*

The case law, then, clearly indicates the availability of punitive damages, at least under general maritime law. The policies underlying such damages also support this conclusion.

It is of course fundamental that the obligation to furnish maintenance and cure is a creature of admiralty. *See* G. Gilmore & C. Black, *The Law of Admiralty* 281 (2d ed. 1975); 1B *Benedict on Admiralty* § 42 (1982). While *Merry Shipping* did not involve an issue of whether punitive damages include or are limited to attorney fees, the opinion clearly cites *Robinson* with approval and refers to punitive damages in the traditional sense.

We recognize that the issue of "pure" punitive damages in a maintenance and cure case is somewhat novel in this district and perhaps in this circuit. Twenty years ago, a judge in this district interpreted *Vaughan* as authorizing an award of attorney fees and "damages due to the failure to pay maintenance" where "the refusal to pay maintenance was arbitrary and unreasonable." *Stewart v. S.S. Richmond,* 214 F.Supp. 135, 137 (E.D.La.1963).

Six years later, another judge in this district reached a similar conclusion:

In addition, the plaintiff is entitled to recover attorney's fees and damages for the willful failure to pay maintenance clearly due. As in *Vaughn v. Atkinson,* 1962, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88, the shipowner was callous in his attitude, and suspended payments as soon as Solet retained counsel. I find his default "willful and persistent."

*Solet v. M/V CAPT. H.V. DUFRENE,* 303 F.Supp. 980, 989 (E.D.La.1969).

Neither of these cases involves punitive damages in the traditional sense of punishment and deterrence. They speak of attorney fees and damages sustained by the seaman as a result of the failure to pay maintenance and cure, but apply terms such as willful, persistent, arbitrary, callous, and recalcitrant with respect to the employer's failure to pay.

Probably as a result of these cases and other similar ones unreported, bench and

bar generally accepted as a correct statement of the law a jury charge which eventually was included substantially in the pattern instructions in general use in this circuit:

However, when that period begins and ends are matters for you to determine from all of the evidence in the case.

It is important to note here that if you find the Plaintiff is entitled to an award of damages under either his Jones Act or his unseaworthiness claims, and if you include either loss of wages or medical expenses in the damage award, then maintenance and cure *cannot* be awarded for the same period of time. In other words, there can be no double recovery for Plaintiff. However, you may still be able to award damages to the Plaintiff for any "willful or arbitrary" failure on the part of the employer to have paid him maintenance and cure when it was due.

Where the Defendant willfully and arbitrarily fails to pay maintenance or provide cure to a seaman up to the time that he receives maximum cure, and such failure results in an aggravation of the seaman's injury, then the seaman may recover those damages and necessary expenses as he can prove he sustained. This would include damages for prolongation or aggravation of the seaman's injury, pain and suffering, any additional medical expenses incurred as a result of the failure to pay, and a reasonable sum to compensate his attorney for services furnished in obtaining maintenance and cure for the Plaintiff.

Therefore, in order to award damages to Plaintiff for the failure of the shipowner to provide maintenance and cure, you must first find:

(1) That Plaintiff was entitled to maintenance and cure;

(2) That it was not provided;

(3) That Defendant willfully and arbitrarily failed to provide cure up to the time that the seaman reaches maximum cure; and

(4) That such failure resulted in injury to the Plaintiff.

An employer acts "willfully and arbitrarily" when he acts without reason, or with callous disregard for the claim of the seaman. An employer is not obligated to pay maintenance and cure to a seaman just because he claims an injury, and he has a right to contest the claim in good faith. However, an employer has a duty to investigate the claim in good faith and with reasonable diligence; so, in this regard, you may only award damages for any failure of the employer to pay maintenance and cure to the Plaintiff if, on the basis of all the facts and opportunities known to and available to the Defendant during the time in question, the refusal to pay maintenance and cure was arbitrary and capricious, or in callous disregard of the Plaintiff's claim.

U.S. Fifth Circuit District Judges Association, *Pattern Jury Instructions (Civil Cases)*. Federal Claims Instruction 7B (West 1980).

It is curious indeed, as noted in the dissent in *Vaughan,* that under traditional concepts of the law of damages, attorney fees are not recoverable as part of punitive damages. Even more curious is the fact that the other elements referred to in the pattern instruction for the additional pain, mental anguish, etc., suffered by reason of the failure to pay proper maintenance and cure, are not punitive in nature at all, but rather compensatory, for the actual damage sustained by the seaman by reason of the breach of the employer's duty to furnish maintenance.

In discussing the two Eastern District cases, the court in *Kraljic v. Berman Enterprises, Inc., supra,* at 415, described as "apparently inconsistent reasoning" the "willful failure" prerequisite for awarding compensatory damages. More recently, the Fifth Circuit held that the pattern instruction approach with respect to the award of such damages is erroneous:

If an unreasonable failure to provide maintenance and cure aggravates the seaman's condition, the shipowner is liable not only for the increased medical expenses and maintenance that may be-

come necessary, but also for the full tort damages that result. *Cortes v. Baltimore Insular Line,* 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932); *see Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); *Blanchard v. Cheramie,* 485 F.2d 328 (5th Cir.1973). If the shipowner, in failing to provide maintenance and cure, has been callous and recalcitrant, *Vaughan,* 82 U.S. at 530–31, 83 S.Ct. at 999, or arbitrary or capricious, *see Richard v. Bauer Dredging Co.,* 433 F.2d [954] 955 (5th Cir.1970), reasonable attorney's fees may also be recovered. *Gaspard v. Taylor Diving & Salvage Co., Inc.,* 649 F.2d 372, 375 (5th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982).

The error is emphasized in a footnote:

> As noted in the text, willful and arbitrary conduct is a prerequisite only for an award of attorney's fees. An unreasonable failure to provide proper care, even absent a showing of willfulness, callousness or arbitrariness, is sufficient to render the shipowner liable for full tort damages.

*Id.* at 375 n. 4.

■ Applying *Vaughan* and *Merry Shipping,* we conclude that where circumstances justify an award for punitive damages for failure to pay maintenance and cure or the proper amount thereof, the jury (or a court in a bench trial) may award such damages as punishment and deterrence, and that our charge to this jury was correct. Applying *Vaughan* and *Gaspard,* attorney fees may be awarded as an element of punitive damages. We so charged this jury. Applying *Gaspard,* if a claim for compensatory damages caused by the failure to pay proper maintenance and cure (the type of damages contemplated by the pattern instruction) is made, it does not depend upon employer conduct so gross as to justify a punitive damage award, but only upon a finding of unreasonableness.[3] No claim

was made for such damages in this case; therefore the jury was not instructed with respect thereto.

We turn now to the question of whether the evidence was sufficient to justify assessment of punitive damages.

■ We treat this issue only briefly, because the evidence supporting punitive damages was overwhelming. From the date of plaintiff's injury until defendant learned that he had consulted an attorney, defendant paid plaintiff $8 a day as maintenance. An additional sum of $526 bi-weekly (over $37 per day) was included in each payment, labelled on the checks as "advance". Defendant's claims supervisor testified that Zapata never intended to seek repayment of these "advances". When plaintiff's suit was served upon defendant, the "advances" stopped abruptly. Thereafter, Zapata paid only $8 a day as maintenance to the date of trial. The only justification offered by defendant for this starvation payment was that this was the amount which had always been paid (presumably from the time Zapata started in business). The "advances" were discontinued, in the words of defendant's claims manager, because after plaintiff retained an attorney, "we were adversaries."

Based upon the evidence reviewed hereafter, the jury concluded that the proper amount of maintenance was $40 per day. Whether a lesser sum than that could have been justified is of no moment. What is clear is that the $8 payment was far less than defendant's obligation, and that Zapata acted "with malice, willfullness, [and] callous and reckless indifference" (jury charge) to plaintiff's right to proper maintenance. The circumstances cried for the jury "to assess punitive damages against Zapata as punishment and as a deterrent to others, to prevent repetition of such conduct" (jury charge).

3. Judge Cassibry makes the distinction between "unreasonable" employer behavior, resulting in compensatory damages, and "arbitrary and capricious", triggering an attorney fee award, in a post-*Gaspard* opinion. *Parker v. Texaco, Inc.,* 549 F.Supp. 71 (E.D.La.1982). However, no mention is made as to punitive damages.

## II. EXCESSIVENESS OF AWARDS

It is well settled that "the grant or denial of a motion for a new trial is within the sound discretion of the trial court." *Valley View Cattle Co. v. Iowa Beef Processors, Inc.,* 548 F.2d 1219, 1220 n. 2 (5th Cir.1977). *See also United States v. Horton,* 622 F.2d 144 (5th Cir.1980). In exercising this discretion when a motion for new trial is premised on excessive damages, the trial court may give the plaintiff the option of submitting to a new trial or of remitting a portion of the damages to a level the court considers justified. Wright & Miller, Federal Practice and Procedure § 2815 (1973). The court "must not substitute [its] judgment of damages for that of the jury." *Bonura v. Sea Land Service, Inc.,* 505 F.2d 665, 669 (5th Cir.1974). Rather the court's task is to determine the "*maximum* award which is reasonably supported by the evidence." *Id.*

It should be noted that the option of remittitur is not open to the plaintiff and a new trial must be granted when the excessive verdict is judged by the court to have been the result of passion or prejudice on the part of the jury. *Lowe v. General Motors Corp.,* 624 F.2d 1373 (5th Cir.1980). We conclude this is not the situation here.

### A. Compensatory Damages

At the time of the accident, plaintiff was thirty-eight years old, was earning an income of over $30,000 a year, and had received many promotions and wage increases in the several years prior to the accident. Considering plaintiff's work-life expectancy, his high level of earnings at the time of accident, and his potential for much greater earnings in the future, his lost wages are very substantial—even after a discount factor is applied. Of particular importance is plaintiff's earnings potential. Based upon plaintiff's past record, both employment and personal, the jury could well have concluded that Harper was an impressive individual who could have expected many more promotions throughout what, prior to the accident, had been expected to be a long work-life. Also, the medical evidence at trial would buttress the jury's probable conclusion that Mr. Harper could never return to any work producing substantial income.

Moreover, the evidence is uncontroverted that plaintiff has undergone and will continue to suffer a very significant degree of pain, suffering, and disability. Plaintiff has already had two laminectomies, one of which had to be aborted before being completed at a later date, and he faces the possibility of at least one more serious surgery. The residual permanent discomfort and disability seriously affects plaintiff both physically and mentally.

While the jury award may be high, it cannot be said that the compensatory damage award of $1,000,000 is beyond the realm of what a reasonable jury could have awarded to compensate plaintiff for all past, present, and future pain, suffering, disability and earnings losses.

### B. Maintenance Rate

An injured seaman is entitled to maintenance which is sufficient to supply him with food and lodging of the kind and quality he would receive if he were still on board the vessel. *Tate v. American Tugs, Inc.,* 634 F.2d 869 (5th Cir.1981). If the shipowner chooses not to provide the maintenance in kind, then a daily stipend must be paid to the seaman. *Id.* To support an award of maintenance, plaintiff need present no more than his own testimony. *Morel v. Sabine Towing and Transportation Co., Inc.,* 669 F.2d 345 (5th Cir.1982). Recently, the Fifth Circuit affirmed a district court award of maintenance at the daily rate of $30, apparently based upon the plaintiff's own testimony. *Wood v. Diamond M. Drilling Co.,* 691 F.2d 1165 (5th Cir.1982). The jury undoubtedly concluded from the testimony, and reasonably so, that the quality of food and lodging on board Zapata's drilling barge was high. While ashore on "company business" away from home, plaintiff was allowed $20 per day for food alone; lodging costs were reimbursed in addition thereto. Finally, when it is considered that the $8 per day figure, sug-

gested by defendant as the proper amount, was "established by the late 1940's", G. Gilmore & C. Black, *supra,* at 307, the daily rate of $40 is not unreasonable in the year 1983.[4]

■ Although the amount awarded by the jury is higher than that set by other courts or which this court would set, we must not substitute our judgment for the jury's. We cannot conclude that an award of $40 per day for maintenance is above the maximum which could be justified.

### C. Attorney's Fees

■ The third award in dispute is the $5000 for attorney's fees related to the maintenance claim. There is no question in this case that, once Zapata's behavior was found to be "arbitrary" or "willful", attorney's fees were properly awarded. Both parties agreed to submit the issue of the amount of attorney's fees to the jury; thus the only issue is whether the amount awarded is unreasonable.[5]

The jury heard no evidence as to the amount of the fee. The jury charge, to which no objection was made, gave no guidelines other than that the fee should be only for services with respect to the maintenance claim and not the claim for damages.

Considering the vigor with which defendant resisted the contention that $8 per day was inadequate and the result accomplished by plaintiff's attorney, we cannot say that this award is unreasonable. While there was no proof of the hours expended on this part of the case, the jury observed the courtroom portion of these services, and could reasonably infer the amount of prepa-

ration required in advance of trial. It could also evaluate the quality of the services performed in its presence. Were we to consider guidelines such as in the *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), litany, we would set a fee within the range of the jury award.

### D. Punitive Damages

■ Although Zapata's act of reducing plaintiff's maintenance presents a prime situation for the assessment of punitive damages, we conclude that the $500,000 award is excessive and should be remitted.

The federal common-law provides little guidance on this question, but several helpful principles from that jurisprudence should be noted: (1) the dual purpose of punitive damages is punishment of the wrongdoer and deterrence of others from commission of a like wrong; (2) punitive damages are keyed to the intent with which the wrong was done; and (3) punitive damages are completely independent of any proof, or lack thereof, of underlying actual or compensatory damages. *Wardman-Justice Motors v. Petrie,* 39 F.2d 512, 516 (D.C. Cir.1930). *See also Rogers v. Loether,* 467 F.2d 1110 (7th Cir.1972); *Scalise v. National Utility Service,* 120 F.2d 938 (5th Cir.1941); *Ackerley v. Credit Bureau of Sheridan, Inc.,* 385 F.Supp. 658 (D.Wyo.1974); *Klein v. Spear, Leeds & Kellogg,* 306 F.Supp. 743 (S.D.N.Y.1969).

Factors which should go into a punitive damage award have been discussed much more frequently in the context of state law punitive damages. Examples of "punitive damage factors", often established by stat-

---

**4.** If 1967 prices are given the constant value of "100", then 1945 and 1982 prices are valued at "53.9" and "292.4", respectively. Standard & Poor's Statistical Service, Basic Statistics, p. 76 (1982); Council of Economic Advisers, Economic Indicators, p. 23 (Feb. 1983). Thus based upon these indicators, prices have increased slightly over 500% since the end of World War II, meaning that $8 for maintenance at that time is the rough equivalent of a $40 award today.

**5.** The Fifth Circuit seems to have accepted the proposition that, when tried with a Jones Act

claim, the issue of the amount of attorney's fees for pursuing a maintenance and cure claim is for the jury. *See, e.g., Gaspard v. Taylor Diving & Salvage Co., Inc., supra; Blanchard v. Cheramie,* 485 F.2d 328 (5th Cir.1973). At least one other circuit disagrees. *See Incandela v. American Dredging Co.,* 659 F.2d 11 (2d Cir.1981), in which the Court of Appeals set aside the jury's verdict and remanded for the trial court to set the fee. "[A] trial judge is better equipped to determine a reasonable amount than is a jury inexperienced in such matters." *Id.* at 15.

ute, are: (1) the proportional relationship between the amount of punitive damages and the underlying compensatory damages; (2) the wealth of the defendant; (3) the frequency of the evil; (4) the degree of the outrage produced by the evil; and (5) the size of the award needed to prevent similar wrongs in the future. *See, e.g., Miley v. Oppenheimer & Co., Inc.,* 637 F.2d 318 (5th Cir.1981) (Texas law); *Anglo-American General v. Jackson National Life Ins. Co.,* 83 F.R.D. 41 (N.D.Calif.1979) (California law).

Obviously, the first of these "state" factors is not applicable here, since it directly conflicts with the third of the "federal" principles. The second factor is not very helpful in the present situation, since the only evidence elicited at trial which is arguably related to Zapata's economic posture is the fact that Zapata operates many very expensive offshore drilling rigs. The third factor, "frequency of evil", is impossible to estimate. However, defendant's practice of reducing its employees' maintenance rates once an "adversary" situation (i.e., the retention of an attorney) arises is company policy; it is impossible to say how many seamen have been dissuaded from asserting their rights in court as a result of the policy. The remaining "state" factors are either explicitly or implicitly covered by the "federal" principles.

It is quite difficult to determine whether a given punitive award is excessive, because, unlike a compensatory award which is usually made up of at least some components which are subject to monetary evaluation, setting damages for the purposes of punishment and deterrence involves an almost completely subjective value judgment.

We share the jury's apparent outrage produced by defendant's intentional evil practice of attempting to prevent litigation by cutting the maintenance rate to a starvation level. However, we conclude that the jury's assessment of $500,000 is excessive and that $250,000 is the maximum assessment reasonably required to accomplish the dual purposes of punishment and deterrence.

CONCLUSION

Defendant's motion is denied insofar as it related to the jury's award of $1,000,000 in compensatory damages, $40 per day in maintenance, and $5000 in attorney's fees. We grant defendant's motion for new trial only on the issue as to the amount of the punitive damage award.

Although we find that punitive damages were properly awarded, we grant a new trial on this issue only, unless plaintiff accepts a remittitur reducing the award to $250,000. Plaintiff is to notify the court not later than May 16, 1983, whether he accepts the remittitur.