458 So.2d 971 (1984)
Levene REED, Plaintiff-Appellee,
v.
SEACOAST PRODUCTS, INC., Defendant-Appellant.
No. 83-889.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1984.
On Rehearing November 26, 1984.
*973 Stockwell, Sievert, Viccellio, Clements & Shaddock, Robert W. Clements, Lake Charles, for defendant-appellant.
Raleigh Newman, Lake Charles, for plaintiff-appellee.
Before GUIDRY, LABORDE and YELVERTON, JJ.
YELVERTON, Judge.
Seacoast Products, Inc., and its insurer appeal jury findings of unseaworthiness, Jones Act negligence, liability for maintenance and cure, and an allegedly excessive damage award, while the plaintiff, Levene Reed, answers the appeal asking for increases in the damage award and attorney's fees, and an award for punitive damages. We increase attorney's fees from $700 to $7500, award punitive damages of $175,000, and otherwise affirm, finding no merit to any of the other assignments of error raised by any party.
The basis for the action was a slip and fall on August 25, 1981, on board the M/V SIKEOYNESS, a menhaden fishing vessel owned by defendant Seacoast Products, Inc., and insured by Northwestern National Insurance Company. Plaintiff, Levene Reed, 48, was the pilot of the vessel, which was underway in the Calcasieu Ship Channel heading for its fishing grounds in the Gulf of Mexico. At about 5:15 in the morning, as Reed was walking down the bridge of the wheelhouse toward the galley, he slipped in water and oil, and fell hard upon the steel deck. The fall and resulting injuries left him permanently disabled.
At the time of trial Reed had already undergone extensive surgery in Houston for the removal of two discs, and there was an indication he was in need of further back surgery for a developing Cauda Equina Syndrome. Defendants paid maintenance at the rate of $15 per day, except for periods of hospitalization, until August 1982, when maintenance was terminated. Just before trial in March 1983, defendants gave plaintiff a check for maintenance *974 from August 1982 until October 25, 1982. Defendants never paid any of plaintiff's medical expenses, which, as of the date of trial, totaled $17,743.
Reed's suit against the defendants combined counts of unseaworthiness and Jones Act negligence as the basis for general and special damages. Additionally, plaintiff demanded maintenance and cure, and sought attorney's fees and punitive damages for the alleged arbitrary refusal of the shipowner to meet its maintenance and cure obligations. After a four-day trial, the jury returned a combination general and special verdict finding (1) the M/V SIKEOYNESS was unseaworthy, (2) its owner was negligent, (3) plaintiff was not himself negligent, and (4) plaintiff suffered damages entitling him to $325,000. The jury also found that (5) plaintiff was entitled to maintenance and cure, that (6) he had not reached maximum cure, that (7) the termination of maintenance and cure was arbitrary and unreasonable, and that (8) attorney's fees should be $700. For a reason undisclosed by the record, neither the court's charges to the jury nor the verdict form mentioned the issue of punitive damages, nor was this issue specifically addressed by the trial court in the judgment on the verdict.
The owner and insurer of the SIKEOYNESS attacks this judgment on several grounds. They contend that the jury erred in all its findings of fact, that the award was excessive, and that the award of both $325,000 and maintenance and cure operated to give plaintiff an improper double recovery of lost wages and the medical expenses. Defendants also questioned the ruling of the trial court excluding an item of physical evidence. The plaintiff answered the appeal and contends that the jury award was insufficient, that the attorney's fee of $700 was insufficient, and that the trial court should have made an award for punitive damages. We will address all of these issues raised by the parties, but first, it is necessary that we look at the appropriate standard of review for this court to test the jury's verdict.
In Ellender v. Texaco, Inc., 425 So.2d 291 (La.App. 3rd Cir.1983), we recognized our limited role in reviewing jury verdicts in civil cases involving claims of seamen under the federal Jones Act and federal maritime law. Under the federal jurisprudence, the appropriate standard of review to test the sufficiency of the evidence in Jones Act and unseaworthiness claims tried before a jury is whether there is a "reasonable evidentiary basis" for the jury's verdict. Loehr v. Offshore Logistics, Inc., 691 F.2d 758 (5th Cir.1982). As explained by Judge Tate in Loehr, the "reasonable evidentiary basis" standard in the federal system applies to the scrutiny of fact findings made by a jury, while the "clearly erroneous" standard applies to the review of findings by a judge, and there is a difference: reviewing a jury verdict, the appellate court exhausts its function once it determines that there is an evidentiary basis for that verdict. Id., at pp. 760-761. Bearing in mind, therefore, the limitations on our power of review, we will now turn to a consideration of the specific issues raised on appeal.
UNSEAWORTHINESS
Under the admiralty doctrine of warranty of seaworthiness the owner of a vessel traditionally is absolutely liable for any injury sustained by a crew member in the course of his employment. Davis v. Hill Engineering, Inc., 549 F.2d 314 (5th Cir.1977). Under this doctrine the owner of the vessel has a duty to provide a vessel that is reasonably fit for its intended use, and this duty to provide a seaworthy vessel requires that its gear, appurtenances and operation must be reasonably safe. Drachenberg v. Canal Barge Co., Inc., 571 F.2d 912 (5th Cir.1978).
In the present case the plaintiff testified that he slipped in a puddle of water containing some oil on the deck of the wheelhouse. The captain of the vessel testified that upon inspection, the deck was wet where the water comes from off the roof of the wheelhouse, but he saw no grease or oil. The captain further stated *975 that the vessel was designed to drain water and other substances from the roof and deck levels to the fishhold, but that the drain pipe had rusted and broken. The captain, the chief engineer and the plaintiff all testified that the hardening units leaked hydraulic oil in the area where plaintiff slipped, and that the unit was leaking at the time of the accident. Given these facts, according to the opinion of a safety expert, a slippery film of this heavy oil would be left on the walkway. Further testimony revealed there was no skid-proof material on the deck and no lighting in that area at the time.
In Curry v. Fluor Drilling Services, Inc., 715 F.2d 893 (5th Cir.1983) the court affirmed a finding that the accumulation of an oil based fluid known as "Black Magic" upon the walkway caused an unseaworthy condition. Also, in McCoy v. United States, 689 F.2d 1196 (4th Cir.1982) the court affirmed a district court's finding that an oil and water spill in the forced draft fan area caused an unseaworthy condition.
In the present case the jury had a reasonable evidentiary basis for finding that there was a water and oil accumulation on the deck of the SIKEOYNESS which caused an unseaworthy condition, and that that condition was the proximate cause of the accident.
JONES ACT
The parties stipulated that plaintiff had seaman's status. Therefore, he was entitled to bring an action based on negligence under the Jones Act, 46 U.S.C. Sec. 688. Federal jurisprudence declares that evidence of "the slightest negligence" is sufficient to sustain a finding of Jones Act liability. Davis v. Hill Engineering, Inc., supra.
There was evidence presented to the jury that Seacoast Products had knowledge of the leaking hardening units. There was also testimony that the area had inadequate lighting and that there was no skid-proof material upon the deck. The jury heard testimony and saw photographs indicating that the drainage system had rusted, allowing water and oil to accumulate upon the deck. This accident happened on a Tuesday, and there was evidence the vessel's decks were cleaned only on weekends when it was in port. There was thus a reasonable evidentiary basis for this finding and the Jones Act verdict will remain undisturbed.
COMPARATIVE NEGLIGENCE
Defendants contend that the jury's finding that plaintiff himself was not negligent was erroneous, arguing that plaintiff was not watching where he was going and that he was not using the handrail that was there for his use.
"In contrast to the broad duty imposed upon a vessel owner to supply a safe work place, the seaman's duty to protect himself is slight." Ceja v. Mike Hooks, Inc., 690 F.2d 1191 (5th Cir.1982). But the duty does exist. Thezan v. Maritime Overseas Corporation, 708 F.2d 175 (5th Cir.1983), cert. denied ___ U.S. ___, 104 S.Ct. 729, 79 L.Ed. 189 (1984).
In the present case the jury's finding that Reed was not negligent has reasonable support in the record. It was early in the morning that he traversed the bridge and the vessel lights that might have lit his way were not on, because they would have interfered with the vision of the captain who was manning the wheel while the plaintiff, the regular pilot, was getting his breakfast. The jury was therefore justified in not agreeing with the argument of defendants that the plaintiff should have been able to see the oily patch. Also, while plaintiff admitted that he was not using the rail, the jury was justified in concluding that there was no apparent need for him to use it at that time because the vessel was underway in calm inland waters at low speeds. The jury might also have concluded that holding the rail with one hand would not have prevented plaintiff from falling if his feet unexpectedly gave way. We affirm the finding that plaintiff was not negligent.
*976 THE EXCLUSION OF PHYSICAL EVIDENCE
Appellant argues that the trial court erred in the exclusion of certain evidence and testimony surrounding the evidence. We disagree.
Over the objection of plaintiff's counsel, the trial judge initially received into evidence a paint flake about two inches square, on the representation that later evidence would establish the connexity between the flake and the vessel. Defendant's expert testified that this flake appeared to be representative of the paint on the vessel deck which he examined on March 7, 1983, and again on the day of trial. However, he stated that he did not take this sample during his inspections.
The paint flake was never identified as being a paint sample from the M/V SIKEOYNESS, much less from the deck where the accident occurred. There was no evidence presented as to who took the sample or when it was taken. Moreover, there was evidence suggesting that some parts of the vessel had been painted since the accident. Pursuant to renewed objection by plaintiff's counsel near the end of trial, the court struck the paint sample and the expert's brief testimony in relation to it, instructing the jury to disregard both.
We find no error in the trial court's determination that there was insufficient identification of the paint flake as having come from the vessel. See Pearce v. Gunter, 238 So.2d 534 (La.App. 3rd Cir.1970), writ not considered, 256 La.888, 239 So.2d 543 (1970).
THE $325,000 AWARD
The jury's award was for both special and general damages, following instructions from the judge that they could give an award for such items as pain and suffering, loss of earnings, past and future, and medical expenses, past and future. The award of $325,000 was not itemized in the verdict. Both sides complain about the amount.
Our opinion is that the sum awarded was fully justified by the plaintiff's injuries, and the only real issue before us is whether we should increase it.
After plaintiff was injured he was treated locally by two physicians. He was then referred to Houston, where his condition was diagnosed by the orthopedic surgeon Dr. John McCutchen and surgery was performed by the orthopedist Dr. L.C. Detenbeck. In the surgery, March 1982, two discs, L3-4 and L4-5, were removed, and a decompression of the spinal canal was performed. These problems, according to the doctors, were caused by the accident. Following this surgery, there was an easing of what had previously been quite a lot of pain, and plaintiff appeared to be recovering well when in June 1982, irritation at the nerve roots in the L5-S1 area began to produce renewed symptoms. In late 1982 and early 1983 Dr. McCutchen diagnosed Cauda Equina Syndrome, which he said was related to the accident, and which he felt urgently required another operation. Failure to get this operation might, in the doctor's words, "very well result in permanent paralysis of his lower extremities." Dr. James Oates, a Houston physician specializing in physical medicine and rehabilitation, saw the plaintiff both before and after the operation and agreed with the diagnosis of Dr. McCutchen. He expressed a similar fear that plaintiff's condition would worsen into a paralysis, and even found evidence of the beginnings of paralysis in the tests that he conducted. While Dr. McCutchen felt the additional surgery would have a 50-50 chance of improving plaintiff's condition, Dr. Oates was of the opinion that surgery would not improve plaintiff but would hopefully prevent him from getting worse.
None of the five treating physicians who testified in the case ever pronounced plaintiff fit to return to sea duty, although they hoped that he might one day improve sufficiently to do light or sedentary work, assuming he could avoid the dire consequence of paralysis which Dr. McCutchen described as "probable." According to the five treating physicians, plaintiff endured considerable pain.
*977 Plaintiff's education was to the fifth grade and his work experience is limited to seamanship on menhaden boats. His work history was excellent. He produced testimony through a professor of economics and finance to show present and future loss of earnings of $250,000. Additionally, his medical bills up to trial were $17,743, and Dr. McCutchen testified that the further surgery that plaintiff needed would cost an additional $10,000. Based on this evidence, plaintiff makes a strong argument that the award of $325,000 was insufficient.
On the other hand, defendants argue that the award was excessive, and in this argument they place their reliance on the testimony of one physician who examined plaintiff twice for evaluation purposes only, and whose testimony disagreed with that of the other medical experts. This physician, an orthopedist who does not do back surgery, examined plaintiff physically and took X-rays on two occasions, once before the plaintiff's operation in Houston and once afterwards. Although this expert, Dr. Norman P. Morin, found on his examinations a less serious condition than any of the treating physicians, he told the jury that he would defer to the opinion of Dr. McCutchen. In view of this frank admission, we doubt if the jury was disposed to believe that plaintiff's condition was any less serious than what his treating physicians testified.
Considering the overwhelming evidence of the seriousness of plaintiff's condition, the award seems low, but we are nevertheless bound by the constrictions placed upon appellate review in the federal system, noting that the court in Thezan v. Maritime Overseas Corporation, supra, said that it would overturn a jury verdict for inadequacy "only upon the strongest of showings." We cannot say that the evidence compels a higher award, and therefore we will not increase it.
DOUBLE RECOVERY
Defendant argues that the trial court erred in rendering judgment awarding the plaintiff maintenance and cure benefits because the damages awarded the plaintiff by the jury would have necessarily included the same elements of damage.
In the present case we find no double recovery in the award. In Ceja v. Mike Hooks, Inc., 690 F.2d 1191 (5th Cir.1982) the court explained that maintenance is a separate and distinct damage element from lost wages "absent an `explicit contractual provision specifying that ... wages [are] to be deemed a substitute for maintenance...." "Id., at p. 1197. Defendants here have not alleged or proved a specific contract that wages were to be deemed a substitute for maintenance.
In the present case the trial court instructed the jury under the unseaworthiness and negligence claims that plaintiff was entitled to lost wages as well as future wages and all past and future medical expenses. The court in its instruction as to the maintenance and cure claim merely stated that the plaintiff would be entitled to the stipulated $15 per day from the date of the accident until maximum cure.
The trial court's judgment reflecting the maintenance and cure findings correctly provided for plaintiff's maintenance until maximum cure is reached. The award and instructions to the jury as to maintenance and cure did not provide for the payment of plaintiff's medical expenses since this element of damage was included in the general award. Therefore, there was no double recovery.
MAINTENANCE AND CURE
The shipowner paid maintenance benefits at the rate of $15 per day from the accident until August 1982, when it unaccountably terminated these payments. There is no explanation in the record as to why benefits were terminated. According to the witnesses, the only person who knew why it happened was a Mr. John Talbot, an employee of the shipowner who lived and worked in New Jersey, and defendants did not call him to testify.
In March 1983 defendants gave plaintiff a check covering maintenance for the period from August 1982 to October 25, 1982. *978 The letter accompanying this check explained the date of October 25, 1982, as "the date he was determined to have achieved maximum medical cure on examination by Dr. Norman Morin." At the trial, which began on March 18, 1983, Dr. Morin testified that he told Mr. Clements, counsel for defendants, on February 23, 1983, that plaintiff had, in his opinion, reached maximum cure on October 25, 1982, the last date he saw the plaintiff for evaluation. However, on March 3, 1983, six days before the decision was made by the defendants that they would rely on Dr. Morin's opinion that maximum cure had been reached on October 25 the year before, defendants' counsel was in possession of the most recent report of Dr. McCutchen, indicating that he had seen plaintiff since Dr. Morin and that plaintiff's condition had deteriorated and he was in need of further surgery. Defendants were therefore clearly on notice by uncontradicted medical opinion more recent than that of their own expert, that plaintiff had not reached maximum cure by October 25, 1982, and yet, for the second time, they terminated maintenance payments.
The jury found defendants arbitrary and capricious in failing to pay maintenance and cure and found that plaintiff had not reached maximum cure as of the date of its verdict.
The jury was correct in these conclusions. Maintenance is the daily allowance for food and lodging paid to a seaman who is injured or becomes ill in the service of the ship. Hodges v. Keystone Shipping Co., 578 F.Supp. 620 (S.D.Tex. 1983). (In the present case the amount was stipulated at $15 per day.) This amount is to be paid by the vessel owner while the seaman is unfit for duty (and not hospitalized) until the time when he reaches maximum cure. Pelotto v. L & N Towing Company, 604 F.2d 396 (5th Cir.1979). Maintenance and cure is owed whenever the seaman is hurt in the service of the vessel, and it is an obligation independent of liability under either unseaworthiness or Jones Act negligence. Id.
Maximum cure is achieved, according to Pelotto v. L & N Towing Company, supra, when it appears probable that further treatment will result in no betterment of the seaman's condition. In the instant case, the jury heard two physicians who had seen plaintiff after October 25, 1982, tell them that plaintiff needed an additional operation to hopefully improve his condition. There was no testimony to the contrary. He clearly had not achieved maximum cure at the time of trial and the jury's verdict in that regard was eminently correct.
Defendants have never paid any medical expenses. Until arguments before this court, they never offered either a defense or an explanation for this neglect. During oral arguments, however, the defendants for the first time urged the idea, citing no cases, that under traditional maritime law, the shipowner has an obligation to provide cure but does not have an obligation to pay for it. We have found no factual or jurisprudential support for this theory. To the contrary, see Pelotto v. L & N Towing Company, supra; Caulfield v. AC & D Marine, Inc., 633 F.2d 1129 (5th Cir.1981); and Parker v. Texaco, Inc., 549 F.Supp. 71 (E.D.La.1982).
We turn next to a consideration of the attorney's fee of $700 which the jury awarded plaintiff. In Gaspard v. Taylor Diving & Salvage Company, Inc., 649 F.2d 372 (5th Cir.1981), cert. denied, 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed. 445 (1982), the court stated that if a shipowner, in failing to provide maintenance and cure, has been callous and recalcitrant, or arbitrary or capricious, reasonable attorney's fees may be recovered. The cases of Harper v. Zapata Offshore Company, 563 F.Supp. 576 (E.D.La.1983), and Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), indicate that the reasonableness of an award of attorney's fees in a maintenance and cure case is to be judged by the abuse of discretion review.
We have no hesitancy in concluding that this award was so low as to amount to an *979 abuse of discretion. Attorney fees were due only with respect to the work involved in the maintenance and cure count of the lawsuit, and the jury was carefully instructed in that regard. Although there was no evidence presented regarding counsel's work on that part of the case, we conclude that there was visible evidence before the jury regarding counsel's efforts sufficient to justify a substantially larger fee than the one that was awarded. The trial, held in Cameron on the Gulf coast, lasted four days. Medical depositions were presented to the jury that were taken in Lake Charles and Houston and showed the presence of counsel. The nature of the case and its complexity necessarily involved considerable work. There was substantial evidence regarding maintenance and cure. Had the case been tried only on the maintenance and cure count, the entire body of medical testimony would have had to be submitted. As recently as the last cycle, a panel of this court upheld an attorney's fee award of $7500 in a worker's compensation case tried under state law. Latiolais v. The Home Insurance Co., 454 So.2d 902 (La.App. 3rd Cir.1984). There is no question in our minds that the circumstances of this case, though governed by different rules, deserves an attorney's fee award at least equivalent to the award in Latiolais. The award of $700 was palpably insufficient; we adjust it to $7500.
PUNITIVE DAMAGES
Reed demanded punitive damages in his petition, but, for reasons which do not appear in the record, this issue was not given to the jury, neither side demanded its submission to the jury, and the trial court failed to make a finding regarding the issue and include it in the judgment. In his answer to the appeal, plaintiff asks us to award punitive damages.
Under our La.C.C.P. arts. 1811 and 1812, if an issue raised by the pleadings is not submitted to the jury and a party makes no objection, he is considered to have waived his right to a trial by jury of the issue omitted. Our articles are based on Federal Rules Civ.Proc., Rule 49(a), the interpretation of which, as seen in J.C. Motor Lines, Inc. v. Trailways Bus System, 689 F.2d 599 (5th Cir.1982), is that the failure to object to the omission of a special issue is deemed to waive jury trial on the issue, but the same rule allows the court to make its own findings on the omitted issue. Our law reads the same. The failure of the trial court in the instant case to make a finding as to punitive damages, can only be regarded as a rejection of that claim. Because it thereby becomes a judge decision and not a jury decision which we are reviewing, the "clear error" standard applies, and, in our opinion, the failure of the trial court to make an award for punitive damages was clearly erroneous. We are authorized under La.C.C.P. arts. 2082 and 2164 to render any judgment which is just upon the record on appeal; similar authority is conferred on federal appellate courts by 28 U.S.C. Sec. 2106. We shall cure the omission of punitive damages in the court below by making an award.
Punitive damages are recoverable under the general maritime law on a showing of willful and wanton misconduct by the shipowner. Complaint of Merry Shipping, Inc., 650 F.2d 622 (5th Cir.1981). Citing this case, a federal trial court in the Eastern District of Louisiana in Harper v. Zapata Off-Shore Company, supra, upheld a jury award of punitive damages against a defendant which had arbitrarily reduced maintenance payments from $40 a day to $8 a day, but reduced the punitive award from $500,000 to $250,000. In that case the jury apparently found that the defendant Zapata had acted "with malice, willfulness [and] callous and reckless indifference", this being the language used in the jury charge. Citing the Harper case as well as the 5th Circuit's Merry Shipping, Inc., case, another district court in the Southern District of Texas, Hodges v. Keystone Shipping Company, supra, refused to reduce a $100,000 punitive damage award for defendant's willful and capricious failure to provide maintenance and cure to plaintiff.
*980 In the present case, the defendant's conductstopping maintenance twice, without any explanation, reasonable or otherwise, and paying no cure benefits whatsoeveris deserving of every adjective used in any of the above cases, including "willful", "wanton", "persistent", "callous", "recalcitrant", "with malice", "reckless indifference", and the words used on the verdict form employed here, "arbitrary" and "unreasonable".
Punitive damages, so the above cases say, are meant to punish and deter. To paraphrase Judge Duplantier in Harper, supra, the circumstances cry out for us to assess punitive damages against Seacoast Products, to prevent repetition of the conduct found here, and we do so, amending the judgment rendered herein to award $175,000 as punitive damages.
For the reasons given above, the judgment of the trial court is amended and judgment is hereby rendered awarding $7500 attorney's fees, and judgment is hereby rendered awarding $175,000 as punitive damages; in all other respects, the judgment appealed from is affirmed. Defendants are to pay all costs of this appeal.
AMENDED, AND AS AMENDED, AFFIRMED.

On Rehearing.
Following our judgment sustaining the jury's findings of unseaworthiness and Jones Act negligence and affirming the jury's award of general damages, as well as increasing the jury's award of attorney's fees and amending the trial court's judgment by awarding punitive damages, defendant filed an application for rehearing. The application contained suggested reasons why the action of this court was erroneous. Specifically, defendant alleges this court erred as follows: in affirming the jury's finding of unseaworthiness and Jones Act negligence; in awarding punitive damages; in increasing the award of attorney's fees; and in affirming the jury's refusal to find the plaintiff comparatively negligent.
We grant a rehearing in order to review our previous disposition of this matter.
After reviewing the record again, studying the briefs, and studying the applicable statutory law and jurisprudence, we conclude that we erred in our previous disposition of this case, but only as regards the granting of an award of attorney's fees; in all other respects the decision remains unchanged.
In Holmes v. J. Ray McDermott & Company, Inc., 734 F.2d 1110 (5th Cir.1984), the trial court awarded plaintiff the sum of $10,000 in attorney's fees due to the defendant's conduct in refusing to continue plaintiff's maintenance and cure benefits. The appellate court reversed the award because of plaintiff's failure to produce any evidence with regard to the appropriate amount of attorney's fees.
In the present case the plaintiff also failed to produce any evidence with regard to an appropriate amount for attorney's fees. Since we must apply federal law, and in accord with the holding of Holmes, supra, we must reverse our judgment increasing plaintiff's award for attorney's fees to $7,500, and also we must reverse the jury's finding that plaintiff was entitled to $700 in attorney's fees.
Although it is not mentioned in defendant's brief for rehearing, we take cognizance of the fact that Harper v. Zapata Off-Shore Company, 563 F.Supp. 576 (E.D. La.1983)a punitive damage case relied on by this court in its original opinionhas been reversed on appeal. See Harper v. Zapata Off-Shore Company, 741 F.2d 87 (5th Cir.1984).
On appeal the court in Harper, supra, determined that punitive damages for the willful and arbitrary refusal to pay maintenance and cure benefits are available under general maritime law; however, the "willful, wanton and callous conduct required to ground an award of punitive damages requires an element of bad faith." In Harper the court reversed the awards of punitive damages and attorney's fees because the record showed that the defendant did not act in callous disregard of plaintiff's rights. The defendant timely investigated *981 his claim, paid all his medical bills, and made regular maintenance payments, although these were later found to be inadequate. The court declined to impute bad faith to Zapata's decision to pay what it thought was the legal minimum for maintenance benefits.
In the present case the defendant without any explanation terminated plaintiff's maintenance benefits twice and failed to pay the major part of the plaintiff's medical bills. It is clear from the record the defendant acted in callous disregard of plaintiff's rights, and we easily impute bad faith on defendant's decisions to terminate plaintiff's maintenance benefits and its decision to refuse to pay plaintiff's cure.
For these reasons, our judgment is reversed insofar as it affirmed and increased the jury's award of attorney's fees, and it is now ordered that the jury's award of attorney's fees be reversed. In all other respects our judgment is hereby affirmed.
REVERSED IN PART AND AFFIRMED IN PART.