Conrad **LOEHR**, Plaintiff-Appellant,

v.

**OFFSHORE LOGISTICS, INC., et al.,**
Defendants-Appellees.

No. 81–3482
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 15, 1982.

Samanie & Barnes, Herbert N. Barnes, Houma, La., for plaintiff-appellant.

Phelps, Dunbar, Marks, Claverie & Sims, Christopher O. Davis, New Orleans, La., for Offshore Logistics, Inc.

Before GEE, RANDALL and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiff Loehr, a cook and seaman aboard the M/V JEB STUART, appeals a jury verdict rendered in favor of Offshore Logistics, Inc., as his employer and owner of the vessel on which he worked. Loehr brought his action under the Jones Act, 46 U.S.C. § 688, for negligence and also under general maritime law for unseaworthiness. He argues on appeal that the defendant was negligent as a matter of law because it left a hatch open on board and that there was no reasonable evidentiary basis for the jury's verdict. Finding no reversible merit to his contentions, we affirm.

*The Facts*

Loehr was employed by the defendant as a cook on its vessel, the M/V JEB STUART. On the morning of July 30, 1978, at around 10:30 a. m., as Loehr stepped over a doorway sill to enter the ship's pantry from the adjacent galley, he fell through an open hatch in the deck, injuring himself. The hatch cover had been removed about an hour earlier. The hatch was six inches inside the pantry beyond the six-inch-high sill, and the plaintiff had never seen its cover removed since he had been

working on the ship. No warning signs or protective devices were posted.

The captain testified in trial, however, that at the crew breakfast around 8:30 a. m. the morning of the accident he met with the whole (five-man) crew (including Loehr) except for the mate in the galley, and told them that hatch covers on the vessel would be opened that morning in order to air out the hatches in preparation for an inspection.[1] The captain stated that he told the crew specifically that the hatch cover in the pantry would be removed. Later that morning, shortly before the accident, the captain also advised the mate, then breakfasting in the galley, of the open hatch covers, although it is not certain that Loehr was within earshot of this conversation. At the trial, Loehr contended that he did not hear either warning about the open hatch.

The ship's engineer testified that the morning of the accident he was in the pantry from approximately 9:00 to 9:30 a. m. removing the bolts securing the hatch cover, and, as the door was wide open, was visible from the galley immediately adjacent to the pantry.[2] The hatch cover was oval-shaped, twenty-four by sixteen inches in dimension, and raised from the floor about four inches. The cover had been bolted shut with twenty to thirty bolts. The engineer left the door between the pantry and galley wide open after he had removed the hatch cover and did not extinguish the light. The engineer felt that by leaving the door wide open, with the light on, one approaching the pantry would observe the obvious hazard. However, Loehr

testified that he did not observe the engineer at work, although he himself was in and out of the galley during that time; the engineer recalled that Loehr was in the galley area at that time.

Loehr fell partially through the hatch when he entered the pantry at 10:30 a. m. to get some jam for the mate's breakfast. He sustained bruises and scrapes, and complained of a sore neck. That morning he received treatment as an outpatient at a hospital emergency room.

*Standard of Review*

The appropriate standard of review for this court to test the sufficiency of the evidence in Jones Act and unseaworthiness claims tried before a jury is whether there is a "reasonable evidentiary basis" for the jury's verdict. *See Vallot v. Central Gulf Lines, Inc.,* 641 F.2d 347, 349–50 (5th Cir. 1981); *Campbell v. Seacoast Products, Inc.,* 581 F.2d 98, 99 (5th Cir. 1978); *Manchack v. S/S OVERSEAS PROGRESS,* 524 F.2d 918, 919 (5th Cir. 1975); *Rabb v. Canal Barge Co.,* 428 F.2d 201 (5th Cir. 1970). In such cases, a reviewing court does not disregard the jury's factfindings to question independently whether a "fundamentally wrong result has been reached," as plaintiff would have us do. That approach would in effect impose a "clearly erroneous" standard of review that is appropriate only for our scrutiny of factfindings made by the lower court judge sitting without a jury. *See Oil Screw NOAH'S ARK v. Bentley & Felton Corp.,* 322 F.2d 3, 5–6 (5th Cir. 1963).[3] Of course, the clearly erroneous

1. The hatch was about six feet deep and contained a water ballast tank that was inspected about every six months. It was standard procedure to leave the cover off a hatch prior to inspection for airing because the air trapped in the hatches was stale and lacked oxygen.

2. The pantry was a small, closet-like room lined with shelves. Its door connected it to the approximately twenty by fifteen foot room which constituted the dining area and kitchen, separated from the dining area by a long, waist-high counter.

3. The cases cited by the plaintiff to support its contention that this court may look beyond the existence of a reasonable evidentiary basis to

apply its independent judgment as to the merits of the dispute involve admiralty bench trials where the clearly erroneous standard of review is correctly applied. *See Tittle v. Aldacosta,* 544 F.2d 752, 753 (5th Cir. 1977); *Norfolk Shipbuilding & Drydock Corp. v. M/V LA BELLE SIMONE,* 537 F.2d 1201, 1203 (4th Cir. 1976); *Movible Offshore, Inc. v. M/V WILKEN A. FALGOUT,* 471 F.2d 268, 271 (5th Cir. 1973); *Theodories v. Hercules Navigation Co.,* 448 F.2d 701, 704–05 (5th Cir. 1971); *Oil Screw NOAH'S ARK v. Bentley & Felton Corp., supra. See also W.R.B. Corp. v. Geer,* 313 F.2d 750, 753 (5th Cir. 1963) (trial court must employ clearly erroneous standard to review factfindings made by a special master).

standard "is not the proper standard to be applied in attacking a jury verdict. Where, as here, there is an evidentiary basis for the jury's verdict, this Court's function is exhausted, and [the plaintiff] is not free to relitigate the factual dispute." *Manchack,* 524 F.2d at 919 (citing *Lavender v. Kurn,* 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946)).

Loehr also contends that leaving the hatchway uncovered constituted negligence as a matter of law and that there was therefore no question of fact to present to the jury. Although there are decisions affirming the award of damages to compensate injuries caused by negligence or unseaworthiness in leaving a hatch open on board, *see, e.g., Eskine v. United Barge Co.,* 484 F.2d 1194 (5th Cir. 1973); *Cordle v. Allied Chemical Corp.,* 309 F.2d 821 (6th Cir. 1962), in these cases the question of the defendant's exercise of ordinary care was submitted to the jury. The decisions thus do not hold that it is negligence per se any time a hatch is left uncovered on board and the ship does not provide for protective devices.[4]

Loehr emphasizes that in *Manning v. M/V SEA ROAD,* 417 F.2d 603 (5th Cir. 1969), this court found that negligence per se existed in leaving a manhole uncovered on a ship while longshoremen were working aboard the vessel, although the injured longshoreman knew of the opening because another worker had fallen into the open hold a short time before. The court found this hazardous condition constituted negligence per se since the open manhole violated specific safety regulations promulgated under the federal Longshoremen's and Harbor Workers' Compensation Act requiring protective guardrails. 417 F.2d at 608–09. In *Manning,* negligence automatically existed in the "violation of a statute which is intended to protect the class of persons to which a plaintiff belongs against the risk of the type of harm which has in fact occurred." *Id.* at 608 (quoting *Marshall v. Isthmian Lines, Inc.,* 334 F.2d 131, 134 (5th Cir. 1964)).

 In the case at hand, unlike in *Manchack,* Loehr is not a member of a class, like the longshoremen, for whom specific safety regulations with regard to open hatches have been designed, and where proof of violation of the regulation establishes fault. We could find no applicable Coast Guard regulations pertaining to open hatches at the time of the accident, *see* 33 C.F.R. § 122.01 et seq., (1978), and the plaintiff has failed to set forth any other pertinent statute or regulation governing them. Although Loehr argues that the defendant's failure to observe its own procedures regarding protective devices constitutes negligence as a matter of law, the concept of negligence per se speaks rather to violations of rules imposed by a governmental body creating an affirmative duty to an identifiable class of persons, *see* W. Prosser, Torts ¶ 36, at 192 (4th ed. 1971),[5] and a defendant's omission of a customary precaution is generally not conclusive of a violation of the standard of care he must observe, but is, rather, evidence that the jury may consider in determining negligence. *See generally* W. Prosser, *supra,* ¶ 33, at 168.

---

4. These cases may also be distinguished, as can *THE CITY OF PANAMA v. Phelps,* 101 U.S. 453, 25 L.Ed. 1061 (1880), by the failure of the defendants therein to issue any warning of the imminent hazard to the plaintiff, as was argued by defendants here. *Cf. Theodories v. Hercules Navigation Co.,* 448 F.2d 701, 705 (5th Cir. 1971) (seaman walked into hatch left open for cleaning purposes after extinguishing extension light, thus "voluntarily encountering [the] known and obvious danger" of an open hatch; court reversed finding of unseaworthiness based on lack of adequate lighting, but did not even consider whether the open hatches, as "constant potential sources of hazard for the unwary," constituted unseaworthy conditions or operational negligence).

5. In addition, it is unclear what the standard safety procedures were regarding open hatches at the time of Loehr's injury. The engineer testified that the hatch would be aired and the inspection conducted within one or two hours of removing the cover. The relief captain testified contradictorily that although the ship did not put up warning or protective devices around an open hatch, it would do so if the hatch were open for a long period—24 to 36 hours—and that it could take that long to air the tank below.

Loehr had the burden of proving that the defendant was negligent or the vessel was unseaworthy. It was necessary, and standard procedure on the ship, to remove the hatch covers to air out potentially dangerous fumes in the hatches prior to port inspection. Questions of fact were correctly presented for the jury to resolve if Loehr had adequate warning via the oral warning of the open hatch in the pantry, an area in which he would necessarily walk to perform his duties as cook, and if the defendant in exercise of reasonable care should have provided further protection from the hazard.

*Existence of a Reasonable Evidentiary Basis*

The jury found that the defendant was not negligent and that the vessel was not unseaworthy because of the open hatch. Under the evidence before the jury, the jury could reasonably find that, despite Loehr's denial that he had heard it, adequate warning of the open hatch hazard was furnished by the captain's specific oral warning to the entire crew that the hatch cover would be removed during the morning. With this and other evidence, we cannot hold that reasonable minded jurors could not have decided that the defendant was not liable for negligence and that its vessel M/V JEB STUART was not unseaworthy.

The more difficult question is whether an oral warning was sufficient, and whether the defendant was liable for negligence or maintaining a vessel in unseaworthy condition because it did not put up protective devices around the open hatch. The jury was free to consider the defendant's failure to do so, especially given the testimony of the ship's engineer that an open hatch was a "hazard" and that if the hatch were to be left open for a long period, guardrails would probably have been installed as a matter of shipboard procedure. But the jury had sufficient evidence in this case, as had the trial court in *Theodories v. Hercules Navigation Co.*, 448 F.2d 701, 705 (5th Cir. 1971), to decide that an oral warning in itself was enough of a precaution.

*Conclusion*

Having determined the record before us indicates that a reasonable evidentiary basis exists for the jury's verdict finding no negligence or unseaworthiness, we AFFIRM the judgment entered by the lower court.

AFFIRMED.