**PORT TERMINAL RAILROAD ASSOCIATION, Appellant,**

v.

**Roy W. SIMS, Appellee.**

**No. 01–83–0457–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 22, 1984.

Rehearing Denied May 17, 1984.

Gordon Holloway, Sewell & Riggs, Houston, for appellant.

Tom R. Letbetter, Garrett, Letbetter & Payne, Houston, for appellee.

Before TOM L. COLEMAN, Sr., Chief Justice (Retired), and DOYLE and COHEN, JJ.

## OPINION

TOM L. COLEMAN, Sr., Chief Justice (Retired).

Roy W. Sims, appellee, brought suit under the Federal Employers' Liability Act (hereinafter referred to as FELA), for personal injuries sustained while working for Port Terminal Railroad Association, Appellant. The accident occurred on April 30, 1981, when two railroad cars crashed into an engine where Sims was sitting, eating his lunch. The following day Sims was discharged for insubordination.

The case was tried to a jury, which returned a verdict finding Port Terminal guilty of eight acts of negligence which proximately caused the accident in question. The jury further found that Sims was not contributorily negligent. The jury found damages of a total sum of $411,-546.00 for loss of earning capacity, past and future, physical pain and suffering, past and future, mental anguish, past and future, and physical impairment, past and future. The appeal has been duly perfected.

The Appellant contends, in its first three points of error, that the trial court erred: (1) in excluding evidence offered concerning its discharge of Sims and of Sims' subsequent failure to appeal such discharge to the National Railroad Adjustment Board; (2) in permitting Sims to offer evidence of his past earnings while employed by Port Terminal; (3) in failing to instruct the jury that in fixing the amount of lost earnings, it should not award any amount based upon what Sims would have received from Port Terminal if Sims had not been injured and had continued to be employed by Port Terminal as railroad engineer.

There is evidence that Port Terminal negligently "kicked" two railroad cars from one end of the north yard all the way to the other end of the north yard, which struck a parked locomotive engine in which Sims was seated, eating his lunch. The impact knocked Sims out of his chair and threw him into the equipment. There was evidence that Yardmaster Rogerson, who was in charge of both Sims' crew and the "kicking crew" failed to warn either crew about the presence of the other on the track. Sims finished his work that day and went home. On the next day, he had trouble walking, had pain in his lower back, and sat in an unusual position on his legs while operating the engine because of the pain in his lower back. On the same day, Sims was ordered by Rogerson to leave his engine during his lunch break. There is evidence that when Rogerson came to the engine, Sims told him that he was the "son of a bitch" who nearly killed him the night before. The railroad subsequently charged Sims with insubordination and fired him.

There is also testimony that Sims treated himself at home with heating pads and rest for two to three weeks before the claims agent for the railroad sent him to a Dr. James Brannon for treatment of his lower back injuries. Subsequently, Sims went to Dr. Andrew Kant, with the approval of the claims agent's office. Shortly thereafter, the claims agent discovered that Sims had filed suit against Port Terminal. The claims agent then immediately notified both doctors that Port Terminal would not be responsible for their bills.

Appellant brings no point of error challenging the damage award as being excessive or not properly supported by credible evidence. While Sims was appealing his discharge under the provisions of the Collective Bargaining Agreement, this suit was filed, and no appeal was made to the National Railroad Adjustment Board. Thus, the validity of Sims' discharge became final. Appellant contends that it should have been permitted to show that as a result, Sims cannot ever return to work for Port Terminal and would have a very difficult time obtaining employment with any other railroad.

The Appellant's contention under the first three points of error is simple. Under the FELA, the plaintiff is entitled to recover for injuries "resulting in whole or in part from the negligence of [the railroad]." 45 U.S.C.A., Section 51. If the railroad employee incurs damage for some reason other than the negligence of the railroad, he is not entitled to a recovery under the FELA. Appellant contends that it was entitled to show the jury that the inability of Sims to earn wages equivalent to those of a railroad engineer, was not due to his alleged injury, but was instead the result of his discharge.

The nature and extent of the evidence required to establish damages resulting from lost earning capacity was considered by the Supreme Court of Texas in *McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710 (1943), a case in which the Plaintiff was engaged in farming prior to his accident, but was not actually farming during the year in which he was injured. After the injury, he was unable to do any work. The Plaintiff was an uneducated Mexican farmer whose only earnings came from manual labor. The amount of his past earnings were not shown with exactitude, the evidence merely disclosing the nature and extent of his farming operations and the kind and amount of the crops he produced.

In *McIver v. Gloria, supra,* the Supreme Court stated certain general considerations applicable to the instant case:

In a personal injury suit, the amount which the Plaintiff might have earned in the future is always uncertain, and must be left largely to the sound judgment and discretion of the jury. However, the verdict must be based on something more than mere conjecture. It must be an intelligent judgment, based upon such facts as are available. Even where the injury is of such a serious and permanent nature, proof is required to show the extent and amount of the damages.... Under this rule, the required certainty of the proof will necessarily vary. Where the Plaintiff is a child, who has never earned any money, the jury must determine the value of its lost earning capacity altogether from their common knowledge and sense of justice. Likewise, where Plaintiff is a housewife, the actual money value of her services need not be proved.... On the other hand, where Plaintiff is employed at a fixed wage or salary, the amount of his previous earnings ordinarily must be shown. And where Plaintiff seeks special damages for loss of his earning capacity in a particular business or profession, the amount of his earnings or the value of his services in that business must be shown with reasonable certainty. The certainty of the proof required is also affected by the nature of Plaintiff's injuries. If Plaintiff's earning capacity is not totally destroyed, but only impaired, the extent of his loss can best be shown by comparing his actual earnings before and after his injury. (citations omitted) ... The fact that Plaintiff was not engaged in farming at the time he was injured does not bar his recovery for loss of earning capacity, because the measure of his loss is his capacity to earn, not his actual earnings. *McIver v. Gloria, supra* at 712-713.

■ The essence of *McIver, supra,* is that it is not essential that the evidence show a loss of earning capacity in a particular business or profession, but only that it show a diminished earning capacity generally, that is, in any business or profession.

■ The damages resulting from decreased earning capacity can best be shown by evidence of what the Plaintiff was capable of earning before he was injured and what he was capable of earning afterwards, and the difference will indicate the damages he has sustained. *Southwestern Freight Line v. McConnell,* 254 S.W.2d 422 (Tex.Civ.App.—El Paso, 1942, writ ref'd).

■ There is evidence that Sims suffered a back injury as a result of the collision, which necessitated an operation. After the operation, Sims continued to have back pain, leg pain, stiffness and muscle spasms. His doctor recommended that he not try to do the work required of a railroad engineer, because that would cause recurrent back problems. The Federal Employers' Liability Act authorizes the courts of this state to award damages for the personal injuries suffered by a railroad employee caused by the negligence of his employer. The evidence before the jury was sufficient to support a finding that Sims was physically able to obtain and retain employment involving heavy labor prior to the accident and that after the accident, he was not able to obtain and retain employment requiring such labor. That evidence authorized the jury to find that Sims would not have been able to do the work of a railroad engineer after his injury. The fact that he was fired by the Port Terminal Railroad Association and probably could not obtain employment as a railroad engineer by reason of said discharge has no bearing on the damage suffered. The same damage would have been sustained had he not been fired. The damages result from the reduced ability to work and to obtain and retain employment. The record of his earnings prior to the date of his injury was properly admitted into evidence. See *Port Terminal Railroad Association v. Inge,* 524 S.W.2d 801 (Tex.Civ.App.—Texas [14th Dist.] 1975, no writ).

■ The trial court did not err in refusing to admit evidence concerning the

fact that the railroad discharged Sims. This was not an issue in the case, since Sims did not seek recovery of lost wages. He prayed for lost earning capacity. The trial judge may well have feared that such evidence would prejudice the Appellant's case. In considering the admissibility of the Plaintiff's discharge, the court in *Kelly v. New York, New Haven and Hartford Railroad Company*, 138 F.Supp. 82 (U.S. D.C., Mass.1956) stated:

"More fundamentally, I believe it was error to have admitted, even indirectly, over Defendant's objection, the fact that Plaintiff had been discharged, since this discharge was entirely immaterial to Plaintiff's case, and was likely to arouse prejudicial feelings."

■ Neither did the trial court err in failing to instruct the jury that, in fixing the amount of lost earnings, it should not award any amount based upon what Sims would have received from Port Terminal had he not been injured and had continued to be employed by the railroad as an engineer. As stated above, Sims did not seek to recover lost earnings, and was contending that he was not physically able to continue in his employment as a railroad engineer. Appellant cites *Rogers v. Thompson*, 364 Mo. 605, 265 S.W.2d 282 (1954) in support of its contention that the instruction should have been given. We are unable to determine from the opinion in that case whether or not the damage issue was general and included loss of earnings as well as loss of earning capacity. In any event, the requested instruction was not in proper form, in that it speaks to loss of "earnings," which is not an issue in this case. The explanatory instruction requested was not in substantially correct form, as required by Rule 279, Tex.R.Civ.P. Appellant's first three points of error are overruled.

The Appellant contends in its fourth point of error, that the trial court erred in refusing to allow impeachment of the Appellee regarding his safety record after the Appellee put his safety record in issue. Counsel for Appellee asked a co-employee

of Sims whether Sims appeared to be a fairly safe engineer, and received an answer in the affirmative. Later on, another fellow employee testified that he had always found Sims to be a good, safe worker. Subsequently, counsel for Appellant sought to introduce, during cross-examination of Sims, the fact that he had been disciplined in the past for twice running through switches, having a collision between his engine and another engine, and running through the gates at the Diamond Shamrock plant.

■ The rule is well settled that when the question is whether or not a person has been negligent in doing, or failing to do, a particular act, evidence is not admissible to show that he has been guilty of similar acts of negligence. *Missouri-Kansas-Texas Railway Co. v. Johnson*, 92 Tex. 380, 48 S.W. 568 (1898); *Davis v. Snyder Industries*, 604 S.W.2d 341 (Tex.Civ.App.—Texarkana, 1980, writ ref'd n.r.e.).

■ The witnesses were questioned regarding their opinion as to whether Sims was a safe engineer, and not as to his general reputation in the community as a safe employee. No attempt was made to impeach the witnesses by showing that they knew of or had heard of the previous acts of negligence on the part of Sims. The trial court did not err in refusing to admit the proffered testimony. *Eichel v. New York Central Railroad Co.*, 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963). Appellant's fourth point of error is overruled.

■ Appellant's fifth point of error complains of the exclusion of certain testimony regarding payment of certain medical expenses incurred by Sims by an insurance company. The general rule is that evidence of a collateral source of benefits is generally not admissible. *Eichel v. New York Central Railroad Co., supra.* The cases which have allowed an exception to this rule involve direct testimony by a witness inviting impeachment by such evidence. *Gladden v. P. Henderson Co.*, 385 F.2d 480 (3rd Cir.1967) *cert. denied* 390

U.S. 1013, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968); *Royal v. Cameron*, 382 S.W.2d 335 (Tex.Civ.App.—Tyler, 1964, writ ref'd n.r. e.).

■ In this case, the issue of medical expenses was not submitted to the jury because the parties had stipulated as to the amount of such expenses.

Appellee had introduced testimony that Port Terminal's claims agent had informed his doctors that they would not pay his medical expenses after August 7, 1981, because he had filed a lawsuit on that date. In response to this testimony, Appellant wished to introduce testimony that Port Terminal only pays 20% of an employee's medical benefits and that Travelers Insurance Company pays the remaining 80%. This testimony was not material to any issue in the case, and the exclusion of the testimony could not have resulted in the rendition of an improper judgment. Rule 434, Tex.R.Civ.P. Appellant's fifth point of error is overruled.

The judgment of the trial court is affirmed.