In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00226-CR
______________________________


JAMIEN NACHOR OLIVARES, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 291st Judicial District Court
Dallas County, Texas
Trial Court No. F02-55717-NU


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Jamien Nachor Olivares has filed with this Court a motion to dismiss his appeal. As
authorized by Tex. R. App. P. 42.2, we grant his motion.
Â Â Â Â Â Â Â Â Â Â Accordingly, we dismiss the appeal. 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â January 12, 2004
Date Decided:Â Â Â Â Â Â Â Â Â January 13, 2004

Do Not Publish



captain of the Iberville.

 Three major events, all occurring within twenty-four hours, establish the unruliness of the
Iberville's crew. First, an American crew member who did not have permission to go into town, left
the craft and returned intoxicated and had either sat or spat on a local Angolan. The Angolan
members of the crew took great umbrage at this display of disrespect toward their countryman, and
a virtual riot broke out among them, during which they made the demand that the offending
American crewman be immediately ejected from the ship. The immediate unrest appeared to have
been assuaged by Roberts's assurance to the Angolans that the offending American crew member
would be escorted off the vessel the following morning. 

 Roberts assumed that the tumult had fully subsided and continued to command the ship from
the vessel's bridge. Heater stuck "his head in the side door" of the bridge and once again asked, "Are
you going to handle this as the captain or am I?" Roberts, attempting to discern the problem to
which Heater made reference, came to the door where Heater stood and was encountered by an
unidentified Angolan assailant on the deck who rambunctiously proclaimed, "You're not the captain,
you die; you die now." The assailant drew a knife and began to pummel Roberts with his fists. 
Roberts managed to escape the assailant and locked himself in the ship's "head" with Heater present
on the bridge with Roberts. Shaken by the incident, Roberts called Abshire, related the occurrences
and his current situation, and asked him to get to the ship as soon as possible. Roberts then secured
the three doors to the bridge and called shore support for further assistance. 

 Irate Angolan crew members began to surround the secured doors shielding Roberts. Heater,
disobeying a direct order from Roberts, opened a locked door, allowing angry Angolans to enter. 
Roberts testified that the Angolans hit him numerous times in the face, kicked him, and caused him
to tumble down the stairs with four of the assailants atop him. At the foot of the stairs, they
continued thrashing Roberts so severely that "there was blood all over the walls." With the aid of
another crew member, Roberts finally extricated himself from them and locked himself in another
room. As a result of this beating, Roberts was bleeding, hurt everywhere, could not see in front of
him at times, and experienced ringing in his ears. When Abshire arrived, Roberts asked to be taken
to a doctor. Although Abshire testified that Roberts looked like he had been assaulted, was "banged
around pretty good" (including a bloodied lip and red eye) and was in fear of his safety, Roberts
claims that two days passed before a doctor was made available to him. As a result of these
incidents, Roberts suffered numerous lasting injuries, including two slipped discs in his back,
thoracic outlet syndrome, "concussive-type syndrome," post-traumatic type headaches, constant
muscle tension, and chronic depression, anxiety, memory loss, and confusion.

II. OVERVIEW OF APPLICABLE MARITIME LAW

 A. Jones Act Negligence 

 By enacting the Jones Act, Congress provided "a seaman injured in the course of
employment" with a cause of action against an employer. 46 U.S.C. § 30104 (2008). To enlarge
protection afforded to seamen under general maritime law, the Jones Act is liberally construed. 
Boutte v. Cenac Towing, Inc., 346 F.Supp.2d 922 (S.D. Tex. 2004). In order to prevail on a Jones
Act negligence claim against his employer, a seaman must establish: (1) personal injury in the
course of his employment; (2) negligence by his employer or an officer, agent, or employee; and
(3)Â causation to the extent that his employer's negligence was the cause "in whole or in part" of his
injury. Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 436 (4th Cir. 1999); Gautreaux
v. Scurlock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997). Negligence under the Jones Act is
interpreted broadly and is merely a failure to act as a prudent seaman under the circumstances. 
Gautreaux, 107 F.3d at 338. Liability for injuries sustained from Jones Act negligence may be based
on two different, but not inconsistent, theories: the direct negligence theory and vicarious liability. 
E.L. Kellett, Annotation, Liability Under Jones Act or Seaworthiness Doctrine for Injuries Caused
by Assault, 22 A.L.R.3d 624 (1968). To prove direct liability under the Jones Act in an assault case,
the plaintiff must prove that the defendant either knew or should have known of the crew member's
felonious and criminal propensities. Birks v. United Fruit Co., 48 F.2d 656, 657 (D.C. N.Y. 1930). 
An employer may also be liable under the direct theory for other acts of direct negligence, such as
allowing fights among the crew, failing to enforce rules prohibiting alcohol and drugs on board, or
otherwise failing to provide for an employee's safety. Colburn v. Bunge Towing, Inc., 883 F.2d 372,
374 (5th Cir. 1989) (fundamental duty of Jones Act employer is to provide seaman employees with
reasonably safe place to work); Stankiewicz v. United Fruit Steamship Corp., 229 F.2d 580, 582 (2nd
Cir. 1956); Jensen v. United States, 184 F.2d 72, 74-75 (3rd Cir. 1950). 

 Recovery under the vicarious liability theory requires proof that the assailant was acting
within the scope of his employment or in furtherance of his employer's business. Miles v. Melrose,
882 F.2d 976, 983-84 (5th Cir. 1989). The law is clear that an assault is not in furtherance of the
master's business when it is committed by the crew upon the master. Birks, 48 F.2d 656. However,
in contrast to the direct liability theory, no proof is required to show that the assailant was of vicious
or dangerous character or that the employer had reason to anticipate the assault. Miles, 882 F.2d at
983-84; 22 A.L.R.3d 624. 

 The causation burden for the claimant under the Jones Act is described as "featherweight." 
Miles, 882 F.2d at 983-84; Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406 (Tex. 1998). If proof
justifies the conclusion that the employer's negligence "played any part, even the slightest, in
producing the injury," the causation burden is met. Gautreaux, 107 F.3d at 335; Ellis, 971 S.W.2d
at 406. This can be accomplished by "very little evidence." Miles, 882 F.2d at 984. 

 B. The Warranty of Seaworthiness 

 Maritime law also provides a cause of action for injuries resulting from defects or
insufficiencies of a vessel, its crew, or its appurtenances that undermine the vessel's seaworthiness,
render it unfit for its intended use, or make the vessel an unsafe place to work. Rivera v. Herndon
Marine Prods., Inc., 895 S.W.2d 430, 434 (Tex. App.--Corpus Christi 1995, writ denied). The
warranty of seaworthiness is a species of liability without fault. Boudoin v. Lykes Bros. Steamship
Co., 348 U.S. 336, 337 (1955). An owner of a vessel is under an absolute, nondelegable duty to
furnish a safe, seaworthy ship, complete with a competent crew. Miles, 882 F.2d at 981;
Wiradihardja v. Bermuda Star Line, Inc., 802 F.Supp. 989, 994 (S.D. N.Y. 1992). This duty is
completely independent of an owner's duty under the Jones Act. Thus, to succeed on a claim for
unseaworthiness, a plaintiff must only show that "the unseaworthy condition of the vessel was the
proximate or direct and substantial cause of the seaman's injuries." Hernandez, 187 F.3d at 439;
Comeaux v. T.L. James & Co., 702 F.2d 1023, 1024 (5th Cir. 1983). It is now settled that the
employer's lack of knowledge of the assailant's character is no barrier to liability under the
seaworthiness doctrine. Boudoin, 348 U.S. at 339-40; Keen v. Overseas Tankship Corp., 194 F.2d
515, 518 (2nd Cir. 1952). This proposition is in accord with the nature of the doctrine as a no-fault
"warranty." 

 In his 1732 work, Gnomologia, English clergyman Dr. Thomas Fuller said, "He that will not
sail till all dangers are over must never put to sea." Since sailors lead a rough life on the seas and
are "more apt to use their fists than office employees," the no-fault warranty does not mean that a
shipowner is liable for injuries "resulting from every sailors' brawl." Boudoin, 348 U.S. at 338-39;
Miles, 882 F.2d at 981. In the case of an assault, liability turns on whether the assault was within
the usual and customary standards of calling or whether it was committed by a seaman with a wicked
disposition, a propensity for evil conduct, or a savage and vicious nature. Boudoin, 348 U.S. at 340. 
If the assaulting seaman has such a disposition, the ship is considered to be a perilous place. Id. An
attack or threat with a dangerous or deadly weapon is sufficient to establish unseaworthiness. 
Hildebrand v. S.S. Commander, 247 F.Supp. 625, 627 (E.D. Va. 1965) (assailant third officer was
incompetent crew member when he initiated unprovoked attack using threat of pocket knife, such
that second officer's claim of unseaworthiness was sustained); 22 A.L.R.3d 624. 

III. PROPER DENIAL OF RIGDON'S PROPOSED JURY INSTRUCTIONS

 A. Standard of Review 

 An instruction is proper if it might assist the jury in answering the submitted questions,
accurately states the law, and finds support in the pleadings and evidence. Tex. R. Civ. P. 277;
Elbaor v. Smith, 845 S.W.2d 240, 243 (Tex. 1992); Wal-Mart Stores, Inc. v. Middleton, 982 S.W.2d
468, 470 (Tex. App.--San Antonio 1998, pet. denied); La. & Ark. Ry. Co. v. Blakely, 773 S.W.2d
595, 598 (Tex. App.--Texarkana 1989, writ denied). A trial court is afforded more discretion when
submitting instructions than when submitting questions. Middleton, 982 S.W.2d at 470. Â Since the
trial court has considerable discretion to determine necessary and proper jury instructions, we review
a trial court's decision to refuse a particular instruction under an abuse of discretion standard. Shupe
v. Lingafelter, 192 S.W.3d 577, 579 (Tex. 2006); In re V.L.K., 24 S.W.3d 338, 341 (Tex. 2000);
Blakely, 773 S.W.2d at 598. An abuse of discretion occurs where a trial court acts arbitrarily,
unreasonably, without consideration of guiding principles, or clearly fails to analyze or apply the law
correctly. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992); Downer v. Aquamarine Operators,
Inc., 701 S.W.2d 238, 241-42 (Tex. 1985); Middleton, 982 S.W.2d at 469. 

 When a trial court refuses to submit a requested instruction on an issue raised by the
pleadings and evidence, we first determine if the instruction was reasonably necessary to enable the
jury to render a proper verdict. Shupe, 192 S.W.3d at 579; Tex. Workers' Comp. Ins. Fund v.
Mandlbauer, 34 S.W.3d 909, 912 (Tex. 2000) (referring to Tex. R. Civ. P. 277, 278). The trial court
should refuse to submit an unnecessary instruction even if it correctly states the law. Blakely, 773
S.W.2d at 599. Well-settled pattern jury charges should not be embellished with addendum. Weeks
Marine, Inc. v. Salinas, 225 S.W.3d 311, 319 (Tex. App.--San Antonio 2007, pet. dism'd). 

 The omission of an instruction is reversible error only if the complaining party establishes
that the omission probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a);
Wal-Mart Stores, Inc. v. Johnson, 106 S.W.3d 718, 723 (Tex. 2003). Any error in the omission of
an instruction is harmless "when the findings of the jury in answer to other issues are sufficient to
support the judgment." Shupe, 192 S.W.3d at 579-80 (citing Boatland of Houston, Inc. v. Bailey,
609 S.W.2d 743, 750 (Tex. 1980)). 

 B. Procedural History Relating to the Charge

 At the charge conference, the trial court adopted Roberts's charge based on the Fifth Circuit
Pattern Jury Charges. Rigdon objected to the charge because it did not instruct the jury on
foreseeability or an assailant's savage disposition. Rigdon's proposed charge unsuccessfully
requested the inclusion of the following instructions:

 A seaman's employer is legally responsible for the negligence of one of his
employees while that employee is acting within the course and scope of his job. He
is not, however, responsible for an assault unless it is foreseeable and the vessel's
Master could have, but failed to, prevent the assault. 


 Unfit crewmembers constitute just as much of a hazard as unfit gear: liability
can arise if there is evidence that a particular crewmember had a propensity for
violence. However, recovery is not allowed for every typical "sailors' brawl" or
"fisticuffs." 


 Recovery from a shipowner, under the doctrine of unseaworthiness, for an
assault by one of the ship's personnel upon another, may be had if there is proof that
the assailant had such a savage disposition as to endanger the others who worked on
the ship. A seaman meets this standard only if he has a wicked disposition, a
propensity to evil conduct, or a savage and vicious nature. 

The trial court denied Rigdon's request to include these instructions. 

 C. Foreseeability Under the Jones Act

 Rigdon argues that the trial court erred in failing to submit its instruction on foreseeability
to the jury. Rigdon's argument is unsuccessful because the proposed instruction attempts to limit
Roberts's theory of recovery, misstates the law, and is unnecessary. The instruction focuses
specifically on the assault by the unknown seaman and the beating by local Angolans. The trial court
could have determined that the instruction does not assist the jury because it does not address
Roberts's direct liability theory--that Rigdon is liable for not ensuring his safety upon a vessel
known to contain an unruly crew that failed to adhere to company policies against alcohol use, drug
use, and fighting. Also, Rigdon's narrowly drafted proposed instruction begins by discussing the
vicarious liability theory of recovery under the Jones Act. In the following sentence, the instruction
states that Rigdon is not liable for an assault unless it is foreseeable. However, the law is clear that
in contrast to the direct liability theory, no proof of foreseeablity is required under the vicarious
liability theory. Miles, 882 F.2d at 983-84; 22 A.L.R.3d 624. Thus, the instruction misleads the jury
and misstates the law.

 The trial court utilized the Fifth Circuit Pattern Jury Charges, which set forth the elements
of Jones Act negligence--(1) personal injury in the course of employment; (2) negligence by the
employer or an officer, agent, or employee; and (3) causation to the extent that his employer's
negligence was the cause "in whole or in part" of injury. Hernandez, 187 F.3d at 436; Gautreaux,
107 F.3d at 335. The requested embellishment by Rigdon was not necessary to render a proper
verdict per Gautreaux. Since the pattern jury charges are well established, we cannot say that the
trial court acted arbitrarily, unreasonably, or without consideration of guiding principles. Walker,
827 S.W.2d at 840. 

 D. Savage Disposition Instruction Under Warranty of Seaworthiness

 Rigdon's proposed instruction on savage disposition is a correct statement of the law. 
However, it again addresses only one theory of recovery under the warranty of seaworthiness. Proof
of the breach of this warranty is a showing that an assailant had a savage disposition or that the
assault was not ordinary. The proposed instruction omitted that an attack with a dangerous weapon
is an unordinary attack that renders a ship unseaworthy. Hildebrand, 247 F.Supp. at 627;
22Â A.L.R.3d 624. (2) Due to this omission, it is possible that the trial court could have found this
instruction as presented would be misleading to the jury. 

 In theory, the jury could feel compelled to render a verdict that the ship was seaworthy if
savage disposition was not proved, even if Roberts proved that an unordinary attack occurred. This
would be an erroneous result. As such, the trial court could have concluded that the instruction
would not aid the jury. Further, the instruction was unhelpful since it focused specifically on the
assaults, yet did not address Roberts's theory that the vessel was unseaworthy because it contained
an unruly crew and was generally not a safe workplace environment. 

 Even if the proposed instruction could have aided the jury, well-settled pattern jury charges
should not be embellished with addenda. Salinas, 225 S.W.3d at 319 (approving trial court's
rejection of instruction on seaman status as embellishment since court used Fifth Circuit Pattern Jury
Charges). Again, because the trial court relied on the Fifth Circuit Pattern Jury Charges (which
correctly stated the law on the warranty of seaworthiness) as its guide, this Court does not determine
that the trial court acted arbitrarily, unreasonably, or without consideration of guiding principles. 
See Walker, 827 S.W.2d at 840. 

 Rigdon's first point of error is overruled. 

IV. THE EVIDENCE IS LEGALLY SUFFICIENT TO ESTABLISH JONES ACT
NEGLIGENCE AND UNSEAWORTHINESS


 A. Federal Standard of Review Applies for Sufficiency Analysis 

 State courts have concurrent jurisdiction with federal courts to try in personam admiralty
actions. 28 U.S.C. Â§ 1333(1) (2008); Garrett v. Moore-McCormack Co., 317 U.S. 239, 249 (1942). 
The United States Supreme Court has expressed its desire to have state courts uniformly apply the
Jones Act and other admiralty law. Garrett, 317 U.S. at 244. Thus, when a state court hears an
admiralty case, the court occupies the same position as a federal court sitting in diversity, and must
apply substantive federal maritime law while following state procedure. Ellis, 971 S.W.2d at 406. 

 The United States Supreme Court's "uniformity requirement extends to the type of proof
necessary for judgment." Garrett, 317 U.S. at 244. Similar to the burden of proof in the Jones Act,
the standard of appellate review is less stringent than under the common law. Ellis, 971 S.W.2d at
406; Salinas, 225 S.W.3d at 322. Under this federal standard, the jury is vested with complete
discretion on all issues of liability, prohibiting this Court from conducting the traditional factual
sufficiency review. Ellis, 971 S.W.2d at 406. Instead, the verdict must be affirmed unless the
evidence points "so strongly and overwhelmingly in favor of one party that the court believes that
reasonable men could not arrive at a contrary [conclusion]." Jones v. Wal-Mart Stores, Inc., 870
F.2d 982, 987 (5th Cir. 1989) (citing Whatley v. Armstrong World Indus., Inc., 861 F.2d 837, 839
(5th Cir. 1988)). In other words, once this Court determines that some evidence supports the verdict
(even though it may be evidence about which reasonable minds could differ), the appellate review
is complete. Ellis, 971 S.W.2d at 406; Miles, 882 F.2d at 981 (holding evidence is sufficient to
support finding of liability under Jones Act unless there is a "complete absence of probative facts"). 
Absent a finding that the verdict is "clearly wrong and unjust," it cannot be set aside. Ellis, 971
S.W.2d at 407. In so determining, this Court views all the evidence in the light most favorable to
the jury's verdict. Jones, 870 F.2d at 987; see also Kansas City S. Ry. Co. v. Catanese, 778 S.W.2d
114, 117 (Tex. Civ. App.--Texarkana 1989, writ denied). Anything more than a scintilla of
evidence is legally sufficient to support the finding. Pilgrim's Pride Corp. v. Smoak, 134 S.W.3d
880, 888 (Tex. App.--Texarkana 2004, pet. denied); Plainview Motels, Inc. v. Reynolds, 127 S.W.3d
21, 29 (Tex. App.--Tyler 2003, pet. denied). 

 The appropriate standard of review to test the sufficiency of the evidence in unseaworthiness
claims tried before a jury determines whether there is a reasonable evidentiary basis for the jury's
verdict. Loehr v. Offshore Logistics, Inc., 691 F.2d 758, 760 (5th Cir. 1982). Where that evidentiary
basis is present, the court's "function is exhausted." Id. 

 B. Evidence Was Sufficient to Support Jury's Finding of Liability Under Jones Act


 Sufficient probative facts in this case suggest that reasonable minds could differ on the
outcome of whether Rigdon was negligent under the Jones Act. See Miles, 882 F.2d at 981; Ellis,
971 S.W.2d at 406. Under the direct theory of liability, an employer can be liable under the Jones
Act for allowing fights among the crew or in failing to enforce rules prohibiting alcohol and drugs
on board. Stankiewicz, 229 F.2d at 582; Jensen, 184 F.2d at 74-75. Based on the testimony that a
crew member left the ship and came back drunk, boarded the ship and was abusive to others,
together with testimony that the crew engaged in drug abuse, alcohol use, and fighting, and that the
very reason that Roberts was reassigned to Iberville from Bienville to quell such conduct in the
future, the jury could conclude that the Iberville's rules prohibiting these activities were not enforced. 
Thus, the jury could have found Rigdon negligent in failing to provide Roberts with a safe place to
work or in failing to provide an adequate, competent crew. 

 By not removing unruly crew members (including Heater, after he proclaimed in Abshire's
presence Roberts was not the captain), the jury could have found that Abshire, Roberts's superior,
breached a fundamental duty of the Jones Act in failing to provide for Roberts's safety. See Colburn,
883 F.2d at 374. In delaying Roberts's medical treatment, even though he was in bad shape, the jury
could have decided that Rigdon was imprudent. See Premeaux v. Socony-Vacuum Oil Co., 144 Tex.
558, 192 S.W.2d 138, 143 (1946). Even focusing on the direct theory of liability for an assault, it
is conceivable that the jury could have determined the assaults committed by an unruly, possibly
dangerous crew, were foreseeable to Rigdon since Abshire was required to replace Heater after
reports of the crew's behavior, and, with the understanding that the crew was dangerous, promised
to provide for Roberts's safety. 

 In sum, based on the evidence, which is viewed in a light most favorable to Roberts's
position, the Court can conclude that the jury's verdict was not clearly unjust and wrong. See Jones,
870 F.2d at 987; Ellis, 971 S.W.2d at 407. 

 C. Evidence Was Sufficient to Support Jury's Finding of Unseaworthiness

 For precisely the same reasoning set out in the previous section, the jury could have found
that Rigdon breached its absolute, nondelegable duty to furnish a safe, seaworthy ship complete with
a competent crew. See Miles, 882 F.2d at 981. Moreover, the jury could have determined that the
assaults committed upon Roberts did not fall into the category of ordinary assaults or sailors' brawls,
but were, rather, vicious and unprovoked attacks. See Miles, 822 F.2d at 981. The jury could
determine that an attack with a knife, even though the knife was not actually employed as a weapon
in the assault, amounted to an attack with a dangerous weapon. Hildebrand, 247 F.Supp. at 627; 22
A.L.R.3d 624. Thus, we can conclude that there was a reasonable evidentiary basis for the jury's
verdict. See Loehr, 691 F.2d at 760. 

 Rigdon's second point of error is overruled. 

V. THE EVIDENCE IS SUFFICIENT TO SUPPORT JURY'S LOST FUTURE
EARNING CAPACITY AWARD


 Earning capacity is the ability and fitness to be employed in exchange for compensation
including salary, commissions, and other benefits. Smoak, 134 S.W.3d at 899 (citing Baccus v. Am.
States Ins. Co., 865 S.W.2d 587, 588 (Tex. App.--Fort Worth 1993, no writ)). Proof of loss of
earning capacity is always uncertain, must be judged on the particular facts of each case, and must
be left largely to the discretion of the jury. Jones, 870 F.2d at 989; McIver v. Gloria, 140 Tex. 566,
169 S.W.2d 710, 712-13 (1943); Port Terminal R.R. Ass'n v. Sims, 671 S.W.2d 575, 578 (Tex.
App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.). Since it is well settled that minors who have never
worked can suffer an injury that diminishes their future ability to work, recovery for loss of future
earning capacity does not require a showing of lost earnings. McIver, 169 S.W.2d at 712; Smoak,
134 S.W.3d at 903. Factors such as stamina, efficiency, weakness, degenerative changes, and the
ability to work even while experiencing pain, are legitimate considerations in determining whether
a person has experienced an impairment in future earning capacity. Smoak, 134 S.W.3d at 899;
Springer v. Baggs, 500 S.W.2d 541, 544 (Tex. Civ. App.--Texarkana 1973, writ ref'd n.r.e.). Thus,
if Roberts demonstrated that pain or any other diminished ability prevented him from getting and
holding a job, he was entitled to a lost future earning capacity award. See Reynolds, 127 S.W.3d at
38.

 The fact that Roberts earned as much as or more during trial than he did before his assault
does not bar him from recovering lost earning capacity. See Jones, 870 F.2d at 990. While the
damages resulting from decreased earning capacity can best be shown by evidence of the amount that
Roberts was capable of earning before he was injured compared to what he was capable of earning
afterward, this type of proof is not required. See Smoak, 134 S.W.3d at 903; Sims, 671 S.W.2d at
578. Rather, the award can be based on a composite of all factors affecting the capacity of a person
to earn. Jones, 870 F.2d at 989-90; Reynolds, 127 S.W.3d at 36. Thus, Roberts was not required
to prove the exact amount of damages, but was only required to present facts from which the jury
could in its sound discretion make a reasoned decision regarding the amount of the award. See
McIver, 169 S.W.2d at 712-13; Springer, 500 S.W.2d at 545 (upholding jury's award of $16,000 lost
earning capacity even though plaintiff went back to work after injury for same employer at same
wage where testimony established plaintiff unable to work overtime, resulting in ten to twenty
percent reduction in work over thirty-six-year life expectancy). 

 Here, trial testimony established that Roberts suffered chronic pain from two slipped discs
in his back, thoracic outlet syndrome, post-traumatic type headaches, and constant muscle tension. 
Even Rigdon's doctor diagnosed Roberts with post "concussive-type syndrome." He also suffered
from chronic depression, anxiety, memory loss, and confusion. Roberts testified that he was having
trouble at work and experienced many headaches, ringing in his ears, exhaustion, panic attacks, had
problems sleeping, and was emotionally upset. He also stated that his doctor preferred that he not
work at all. His psychologist recommended that Roberts take a lesser position at work and expressed
doubt as to whether Roberts would ever again be able to command the larger vessels. Nevertheless,
even though Roberts had difficulty passing the physical examination, he was employed by Hornbeck
to work on smaller boats. This employment, however, was short-lived and Roberts was subsequently
discharged by Hornbeck. At the time of trial, he had worked as needed on small boats for Brown
Water Marine Company on a "time-on/time off" basis. Rigdon's attorney pointed out that because
of his injuries, Roberts was endangering people's lives by working for Brown Water Marine
Company. Based on this testimony, we conclude that Roberts demonstrated that pain or other
diminished ability prevented him from obtaining and holding a job such that he was entitled to a lost
future earning capacity award. 

 To justify the amount of the award, Roberts stated that work on the smaller Hornbeck boats
paid $420 per day. (3) On these boats, he could work 243 days for an annual salary of approximately
$102,000. Prior to his injuries, Roberts could work on larger crafts. The Hornbeck large boats paid
a captain or master $615 per day for an approximate salary of $149,445. (4) Roberts is forty-seven
years old and the closing argument suggested an additional thirty-three years of life expectancy. As
an example of how the jury could reach its award, simply subtracting $102,000 from $149,445 gives
an annual discrepancy of $47,445. Multiplied by thirty-three (Roberts's remaining life expectancy),
the damages for lost earning capacity would equal $1,565,685. The jury may have further taken
Roberts's testimony that he can only work 180 days out of the year, multiplied that by $195 (the
difference between $615 per diem pay for large boats and the $420 per diem pay for smaller boats),
and again multiplied a rounded figure of $35,000 annual loss by thirty-three years to arrive at a loss
of $1,155,000. In sum, based on the numbers and figures presented at trial, we find support for the
jury's $1,150,000 lost future earning capacity award. 

VI. CONCLUSION

 We affirm the judgment of the trial court because: 1) the refusal to submit Rigdon's proposed
instructions was not in error, and 2) there was sufficient evidence presented to support the jury's
findings regarding (a) Rigdon's liability under the Jones Act, (b) a breach of Rigdon's warranty of
seaworthiness, and (c) the lost future earning capacity award of $1,150,000. 




 Bailey C. Moseley

 Justice


Date Submitted: September 10, 2008

Date Decided: October 7, 2008

1. This case has been transferred to this Court as part of the Texas Supreme Court's docket
equalization program.
2. Instead, Rigdon attempts to show examples where vessels were found to be seaworthy even
though deadly weapons were used during assaults. In the following cases Rigdon cited, the courts
concluded that the vessels were not unseaworthy because the plaintiff actually provoked the attack:
Connolly v. Farrell Lines, Inc., 268 F.2d 653 (1st Cir. 1959); Jones v. Lykes Bros. Steamship Co., 
204 F.2d 815 (2nd Cir. 1953); Fountain v. John E. Graham & Sons, 833 F.Supp. 873 (S.D. Ala.
1993); Scurlock v. Wolfe, No. 05-689, 2007 U.S. Dist. LEXIS 26801 (E.D. La. Apr. 11, 2006);
Gulledge v. United States, 337 F.Supp. 1108 (D.C. Pa. 1972). 
3. Roberts also testified that he made $110,000 annually working for Hornbeck while he was
making $102,000 working at Rigdon. However, it is important to note that Roberts attempts to show
that if he had not been injured, he could work the Hornbeck big vessels and make $149,445 per year. 
4. Roberts also noted that he was able to work only 180 days annually instead of the full 243
days per year.